LINDA METZ, Plaintiff/Mother v. MICHAEL METZ, Defendant/Father

No. COA10-1382

(Filed 7 June 2011)

**1. Appeal and Error— interlocutory orders and appeals— child support order—pending alimony claim resolved— temporary support moot**

The appeal of a child support order was interlocutory when filed because an alimony claim was still pending, but the case became ripe for appeal when the alimony claim was dismissed without prejudice. The challenge to the temporary support order became moot when the permanent support order was entered.

**2. Child Custody and Support— imputed income—findings sufficient for review**

There were sufficient findings in a child support case to allow appellate review of the trial court's imputed income conclusions

**3. Child Custody and Support— imputed income—bad faith**

The trial court did not err in a child support case by finding that a father acted in bad faith, so that income could be imputed to him, where the father molested his daughter and lost his position as a nurse anesthetist.

**4. Child Custody and Support— imputed income—money under father's control**

The trial court did not err in a child support case in the amount of income imputed to a father who had molested his daughter where the father could no longer work as a nurse anesthetist, but had more than $355,000 under his control.

**5. Child Custody and Support— children's expenses and parents' ability to pay—not reached—imputed income proper**

Contentions in a child support case concerning findings or conclusions about the children's expenses and the parent's ability to pay were not reached where those issues involved an alternate route to the amount of support awarded and the initial route, imputation of income to the father, was proper.

Appeal by defendant from orders entered 6 February 2009 and 27 May 2010 by Judge Jane V. Harper in Mecklenburg County District Court. Heard in the Court of Appeals 11 April 2011.

*James, McElroy & Diehl, P.A., by Preston O. Odom, III, Jonathan D. Feit, and Sarah M. Brady, for plaintiff-appellee.*

*Law Office of Richard B. Johnson, by Richard B. Johnson, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant Michael Metz and plaintiff Linda Metz were married on 1 November 1997. During their marriage, the parties adopted four children. The parties separated from one another on 3 July 2008 and are now divorced.

During their marriage, Mr. Metz worked at Presbyterian Hospital ("Presbyterian") as a nurse anesthetist, where he earned $18,867.00 a month. Ms. Metz worked and continues to work as a teacher employed by Charlotte Mecklenburg Schools. Her monthly income is $7,607.00. Thus, prior to their separation and divorce, the Metz's combined monthly income was $26,474.00.

While the parties were still married, Mr. Metz sexually assaulted one of his daughters. He was charged with three felony charges of taking indecent liberties with a minor. As a result of those charges, he was suspended from his position at Presbyterian without pay on 15 September 2008.

METZ v. METZ

[212 N.C. App. 494 (2011)]

On 27 October 2009, a consent order addressing equitable distribution of the parties' property was entered. As part of that order, Mr. Metz was distributed a Wachovia IRA account with a balance of $107,497.72, the proceeds of a Wachovia Roth IRA account, a Vanguard Traditional IRA account with a balance of $11,171.76, and a Vanguard Rollover IRA account with a balance of $62,219.33. That same day, a consent order was entered giving Ms. Metz sole permanent legal and physical custody of the children and ordering that Mr. Metz have no contact, visitation, or communication with the children.

As of the temporary child support hearing on 8 January 2009, Mr. Metz's criminal case had not yet been resolved and he was working delivering pizzas, earning $6.85 an hour for a total gross monthly income of $1,172.00. A temporary child support and interim distribution order was entered on 6 February 2009, finding that Mr. Metz was "capable of contributing to the support of the minor children" and it was equitable "to impute income to [Mr. Metz] in light of his voluntary actions, unreasonable behavior, conscious disregard of his obligation to support his minor children and his termination from the healthcare field being entirely predictable."

Following the temporary child support hearing, Mr. Metz continued to work at the pizza store for a total of seven months until 27 July 2009 when he was convicted of sexual battery of a minor and incarcerated for two months. As a result of that conviction, Mr. Metz was placed on the sex offender registry, was asked to resign from his position at Presbyterian, and, after completing his incarceration, was not permitted to return to delivering pizzas because of the possibility of contact with children. His licenses as a certified registered nurse anesthetist and as a registered nurse practitioner were suspended by the state licensing board. The licenses will remain revoked for as long as he remains on the sex offender registry—a period of at least ten years.

As of the 8 April 2010 hearing, despite an extensive job search, Mr. Metz still had not found regular work. In his financial affidavit which he provided to the court, Mr. Metz listed his income as $25,000.00; however, he explained at the hearing that this figure was "speculation," that it is "a hopeful number," and that "it's an overestimate if [he] had to work for minimum wage."

When calculating permanent child support, the trial court imputed to Mr. Metz a monthly gross income of $18,867.00, which was the last salary he received while working as a nurse anesthetist and the same salary figure which the court had imputed to Mr. Metz in the

temporary child support order. The court noted that Mr. Metz's efforts to find employment were "well-documented and unchallenged" but that he had been unable to secure any employment besides "temporary jobs lasting only a day or two, because of his status as a convicted sex offender." The court also noted that:

> As sympathetic as [Mr. Metz's] plight might be, unavoidably, the Court comes back to the plain fact: his plight resulted from his own behavior in sexually abusing his child, and unemployment was the foreseeable result. While he probably did not intend all the consequences which have occurred, certainly, Mrs. Metz and the parties' four children did nothing to cause the destruction of this family, or the loss of income.

The court then noted that Ms. Metz's monthly gross income combined with the imputed monthly gross income of Mr. Metz is $26,474.00, which is above the maximum amount contemplated by the North Carolina Child Support Guidelines and that therefore the court would consider the reasonable needs of the children in determining the appropriate amount of child support. The court found that the children's total reasonable monthly needs and expenses total $7,956.00. The court noted that if it were to base Mr. Metz's child support obligation on this figure, Mr. Metz would be responsible for 71% of $7,956.00 or $5,670.00.

The court considered both parties' submissions as to what a reasonable amount of child support would be. Mr. Metz requested that his monthly income be calculated at $2,083.00, resulting in a monthly child support obligation of $447.00. Ms. Metz submitted a child support worksheet which based the parties' monthly combined income at the highest level set forth in the Child Support Guidelines, $25,000.00—a figure slightly lower than the parties' monthly combined gross income with Mr. Metz's salary imputed at the level he earned at Presbyterian, $26,474.00. At the $25,000.00 income level, the combined monthly child support obligation would be $3,350.00 and Mr. Metz's 71% share would be $2,627.00.

The court ordered that Mr. Metz's child support obligation be set at $2,627.00 per month, a number which was calculated by imputing Mr. Metz's income so that the parties' combined monthly income is calculated at the highest level of income set forth in the Guidelines. The trial court also found that the parties were "capable of providing child support for the benefit of their minor children" at this level.

In the alternative to imputing Mr. Metz's income at the level he made while working at Presbyterian, the court justified the $2,627.00 monthly child support obligation by finding that Mr. Metz's proposed monthly child support obligation of only $447.00 was insufficient to meet the reasonable needs of the parties' four children and that an upward deviation from the Guidelines was appropriate based on the children's actual needs and expenses and the combined income of the parties.

Mr. Metz appeals.

_____

Mr. Metz argues that in both the temporary and permanent child support orders the trial court failed to make sufficient findings of fact supporting the imputation of income, erred in imputing income, and, even if imputation was proper, erred in the amount of income imputed. Furthermore, Mr. Metz contends that the trial court's alternative basis for the award, a deviation from the Guidelines, lacked sufficient findings of fact or conclusions of law regarding the reasonableness of the children's expenses and the parents' ability to pay support.

[1] Preliminarily we must address whether this appeal is properly before us at this time. When Mr. Metz filed this appeal, it was interlocutory, as Ms. Metz's alimony claim was still pending. However, her claim for alimony was dismissed without prejudice on 11 October 2010 and therefore the case is ripe for appeal.

We will not consider Mr. Metz's challenge to the temporary support order because the entry of the 27 May 2010 permanent support order mooted any appeal of the 6 February 2009 temporary support order, which was interlocutory on its face. *See Smithwick v. Frame*, 62 N.C. App. 387, 391, 303 S.E.2d 217, 220 (1983) ("Any objections that defendants may have had to [the challenged] order, interlocutory on its face, were made moot by the . . . Order awarding plaintiff permanent custody of his minor child. We therefore will not consider them.").

In reviewing the permanent child support order, our review is limited to a determination of whether the trial court abused its discretion. *Leary v. Leary*, 152 N.C. App. 438, 441, 567 S.E.2d 834, 837 (2002). Under this standard of review, the trial court's ruling will be overturned "only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.*

I.

[2] Mr. Metz first argues that the trial court's findings of fact were insufficient to provide "any detail as to why [it] [imputed] income to

[him]." The trial court must make sufficient findings of fact to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law. *Id.* at 441-42, 567 S.E.2d at 837. In the present case, the court specifically found that:

> 10. Prior to his arrest and conviction, Defendant/Father was employed at Presbyterian Hospital and earned a monthly salary of $18,867.00. Defendant/Father lost his position in the health care field as a result of his own criminal behavior.
>
> . . . .
>
> 14. As sympathetic as [Mr. Metz's] plight might be, unavoidably, the Court comes back to the plain fact: his plight resulted from his own behavior in sexually abusing his child, and unemployment was the foreseeable result. While he probably did not intend all the consequences which have occurred, certainly, Mrs. Metz and the parties' four children did nothing to cause the destruction of this family, or the loss of income.

We hold these findings are sufficient to permit us to determine that the trial court's legal conclusions were a correct application of the law. Therefore, we overrule this assignment of error.

## II.

[3] Mr. Metz next contends that the trial court erred in finding that he acted in bad faith and, therefore, the imputation of his income was improper. We disagree.

We first note that, in his financial affidavit, Mr. Metz himself listed his annual income at $25,000.00—a figure which was already an imputation, as he explained at the hearing that he was currently unemployed and had been for some time and that the $25,000.00 figure was "speculation," "a hopeful number," and that it would in fact be an "overestimate if [he] had to work for minimum wage." Mr. Metz could therefore be deemed to have waived his objection to imputation at trial. *See State ex rel. Carteret Cty. Child Support Enforcement Office v. Davis*, —— N.C. App. ——, ——, 700 S.E.2d 85, 88 (2010) ("[O]ur Supreme Court has long held where a theory argued on a appeal was not raised before the trial court the argument is deemed waived on appeal." (citing *State v. Augustine*, 359 N.C. 709, 721, 616 S.E.2d 515, 525 (2005), *cert. denied*, 548 U.S. 925, 165 L. Ed. 2d 988 (2006))); N.C.R. App. P. 10(b)(1).

Even assuming that Mr. Metz had not already conceded at the hearing that imputation was appropriate, the trial court did not abuse its discretion by imputing income to Mr. Metz. "Generally, a party's ability to pay child support is determined by that party's actual income at the time the award is made." *McKyer v. McKyer*, 179 N.C. App. 132, 146, 632 S.E.2d 828, 836 (2006) (citing *Atwell v. Atwell*, 74 N.C. App. 231, 235, 328 S.E.2d 47, 50 (1985)), *disc. review denied*, 361 N.C. 356, 646 S.E.2d 115 (2007). The trial court may, however, impute to a party their capacity to earn as the basis for an award in certain circumstances.

"[A] party's capacity to earn income may become the basis of an award if it is found that the party deliberately depressed its income or otherwise acted in deliberate disregard of the obligation to provide reasonable support for the child." *Askew v. Askew*, 119 N.C. App. 242, 244-45, 458 S.E.2d 217, 219 (1995). "It is clear, however, that '[b]efore the earnings capacity rule is imposed, it must be shown that [the party's] actions which reduced his income were not taken in good faith.' " *Ellis v. Ellis*, 126 N.C. App. 362, 364, 485 S.E.2d 82, 83 (1997) (alterations in original) (quoting *Askew*, 119 N.C. App. at 245, 458 S.E.2d at 219); *see also Wolf v. Wolf*, 151 N.C. App. 523, 527, 566 S.E.2d 516, 519 (2002).

"[T]he determination of bad faith . . . is best made on a case by case analysis by the trial court." *Pataky v. Pataky*, 160 N.C. App. 289, 307, 585 S.E.2d 404, 416 (2003), *aff'd in part, review dismissed in part*, 359 N.C. 65, 602 S.E.2d 360 (2004). Mr. Metz argues that his loss of his position as a nurse anesthetist and the forfeiture of his licenses, subsequent difficulty in finding other employment, and resulting loss in income were involuntary and are not the result of bad faith on his part. We cannot agree.

In fact, involuntarily terminated obligors have been still found to have exhibited the bad faith required so that their former income level may be imputed to them. As acknowledged by Mr. Metz, "[b]ad faith has been found where the obligor had a history of reckless behavior at his employment and that [sic] his loss of employment was inevitable." *See Wolf*, 151 N.C. App. at 528, 566 S.E.2d at 519 (finding bad faith and imputing income when misconduct "lead[s] to an entirely predictable [employment] termination").

Mr. Metz attempts to distinguish his case from the facts in *Wolf* by arguing that "the obligor [in *Wolf*] had a history of reckless actions that directly related to his behavior at his employment." He argues

that, on the other hand, his own "criminal charges were due to actions that occurred outside of his work environment and were totally unrelated to his work performance or his behavior at his employment." Frankly, the distinction which Mr. Metz attempts to draw is unpersuasive. The court's finding in *Wolf* that the obligor disregarded his support obligations did not turn on the fact that his voluntary actions occurred at work. Rather, the court in *Wolf* emphasized that the obligor "voluntarily effected" his termination and continued unemployment. *Id.* at 527-28, 566 S.E.2d at 519.

Here there is substantial evidence in the record, and the trial court did not err by finding and concluding, that the plaintiff disregarded his parental obligations. The court found that Mr. Metz's "plight resulted from his own behavior in sexually abusing his child, and unemployment was the foreseeable result." Mr. Metz acted voluntarily when he sexually abused his daughter. Criminal prosecution, conviction, registration as a sex offender, termination of his employment in the field of nursing, and difficulty finding employment in any other field are clearly foreseeable results of the abuse which Mr. Metz voluntarily committed, and to argue otherwise approaches absurdity. We hold that the trial court did not err in imputing income to Mr. Metz.

III.

[4] Mr. Metz also argues that, even if the court properly found that he acted in bad faith and that imputation was therefore appropriate, it erred by assigning him a gross monthly income of $18,867.00, the income which he earned as a nurse anesthetist. Specifically, Mr. Metz contends the court's findings of fact were insufficient to support a conclusion that he was currently capable of earning $18,627.00 per month. He argues that he no longer has the potential to make $18,627.00 per month because, with the loss of his nursing license, his qualifications have drastically changed.

The trial court, however, found that Mr. Metz was "capable of providing child support for the benefit of [the] minor children as set forth herein." This finding is amply supported by evidence in the record in that Mr. Metz testified that he had $355,000.00 under his control, over $40,000.00 of which was in cash, and the evidence shows that in December 2009, January 2010, March 2010, and April 2010 Mr. Metz withdrew a total of $40,000.00 out of retirement accounts which were not included in his financial affidavits. This assignment of error is overruled.

**[5]** Finally, Mr. Metz contends that the court failed to make sufficient findings of fact or conclusions of law regarding the children's expenses and the parents' ability to pay support when it noted that, "[a]s an alternate route to the amount of child support awarded," a "deviation [from the North Carolina Child Support Guidelines] is appropriate based on the children's actual needs and expenses and the combined income of the parties." This Court does not need to reach this argument as we have held that imputation in this case was proper.

Affirmed.

Judges ELMORE and GEER concur.