GEER, Judge.
 

 *139
 
 Plaintiff Craig Steven Smith appeals from the trial court's equitable distribution judgment, three corresponding qualified domestic relations orders, and a permanent child support and custody order. Plaintiff primarily argues on appeal that the trial court erred by requiring him to pay his children's private school tuition without finding that his children have a reasonable need for private schooling that a public school education cannot provide. Because the parties' combined yearly income exceeds the level at which the presumptive North Carolina Child Support Guidelines ("the Guidelines") apply, we hold that the trial court was not required to make
 
 *18
 
 findings mandated by the Guidelines. Instead, we hold that the trial court's conclusion that private school is a reasonable need of the children is fully supported by the court's findings of fact that private school is part of the children's accustomed standard of living, that the parties are capable of paying the tuition, and that the parties have previously agreed that their children would be educated in private school. We therefore affirm the trial court's order that plaintiff pay his children's private school tuition. Because the parties have shown that the trial court failed to make adequate findings of fact with respect to certain aspects of the child support and equitable distribution orders, we reverse those orders and remand for further findings of fact. We find no error with respect to the custody order and affirm it.
 
 *140
 

 Facts
 

 Plaintiff and defendant married on 1 August 1992. They met while employed as certified public accountants at the same company in New Orleans, Louisiana. They later moved to Houston, Texas where plaintiff took a job with PricewaterhouseCoopers ("PwC"). Three children were born to their marriage: Margaret ("Meg") on 13 October 1996; Emilie on 16 January 1999; and Lara on 8 April 2002.
 

 In August 2003, they moved from Houston to Charlotte, North Carolina so that plaintiff could pursue his career as an equity partner with PwC. Within a few years after the move to Charlotte, plaintiff's income as an equity partner substantially increased from approximately $150,000.00 in 2003 to over $500,000.00 by 2007. During the same period, defendant's salary decreased from around $80,000.00 to approximately $38,000.00, as she became the primary caregiver for the children and plaintiff became the primary supporting parent.
 

 Ever since the children began school, plaintiff and defendant shared a mutual desire to educate their children in private schools. When the parties relocated to Charlotte, they enrolled their three children at Providence Day School ("PDS"), where they presently remain enrolled.
 

 The parties separated on 1 June 2007, when defendant left the marital home a few months after plaintiff discovered that defendant was having an extramarital affair and was pregnant from that affair. From the date of separation until February 2009, the parties shared physical custody of the children, with each parent having the children for nearly an equal amount of time. However, beginning in February 2009 and continuing until the trial court entered a temporary custody order in February 2011, defendant unilaterally restricted plaintiff's time with the children to every other weekend.
 

 Also upon separation, plaintiff began objecting to the children's continued enrollment at PDS. He agreed for them to finish the 2007-2008 school year at PDS, but expressed his desire to enroll them at a less expensive private school, even though he never made a significant effort to identify one. Plaintiff did not voluntarily contribute to the PDS tuition after the 2007-2008 school year. Defendant therefore paid the children's tuition for the 2008-2009 and 2009-2010 school years with money from the children's individual Uniform Transfers to Minors Act ("UTMA") accounts in the amounts of $53,810.00 and $49,804.18, respectively, for each school year. She also utilized individual savings accounts to pay the 2009-2010 tuition.
 

 *141
 
 Plaintiff filed for absolute divorce on 8 May 2009, which the trial court granted on 17 September 2009. In his complaint for divorce, plaintiff also sought primary custody of the children and an unequal equitable distribution of the marital property in his favor. Defendant filed an answer and counterclaim on 19 June 2009, seeking continued primary custody, retroactive and prospective child support, and an unequal distribution of the marital property in her favor.
 

 The trial court entered a final equitable distribution pretrial order on 1 June 2010. In this order, the parties stipulated to classifying three of plaintiff's PwC retirement accounts-a 401(k) plan, a "Keough" plan, and a "RBAP" plan-as marital property until the date of separation and any post-separation accruals in those accounts as plaintiff's separate property. Also, on 23 December 2010, the parties stipulated in writing that
 
 *19
 
 they would equally divide the net equity received from the sale of the marital residence.
 

 On 21 February 2011, the trial court entered a temporary child support order, requiring plaintiff to pay $5,000.00 in child support to defendant on the first of each month beginning 1 August 2010 and all of the children's private school tuition at PDS going forward. Also on 21 February 2011, the trial court entered a temporary custody order essentially maintaining the custody arrangement created by defendant in February 2009. This order provided that plaintiff would have the children for approximately six overnights a month and for four weeks of the children's summer vacation.
 

 On 22 July 2013, the trial court entered its final equitable distribution order in which it ordered an unequal distribution in favor of defendant. The order was based on findings including, but not limited to, the extent of defendant's inheritance, the value of plaintiff's PwC partnership interest as of the date of separation, and the classification and valuation of plaintiff's PwC retirement accounts. With regard to defendant's inheritance, the trial court acknowledged her maternal inheritance of over $916,000.00, which she contributed to the marriage. However, the trial court made no findings relating to defendant's substantial paternal inheritance, aside from three parcels of real property. In relation to plaintiff's PwC partnership valuation, although the court "question[ed] the accuracy and validity of both parties' methods of computing the value," it ultimately concluded that "Defendant/Wife's methodology appears to be the most appropriate of the two."
 

 The trial court further found, despite prior stipulations to the contrary, that the post-separation accruals in plaintiff's three PwC retirement
 
 *142
 
 plans were divisible property. Plaintiff thereafter filed several post-trial motions on 1 August 2013, which the court granted pursuant to Rules 52 and 59 of the Rules of Civil Procedure. As a result, the trial court entered an amended equitable distribution order on 20 November 2013 reclassifying these post-separation accruals as plaintiff's separate property. Then, on 28 January 2014, the trial court entered three qualified domestic relations orders ("QDROs"), distributing defendant's shares of these retirement plans accordingly.
 

 Upon entering a permanent custody order on 9 July 2014, the trial court reversed course from the temporary custody arrangement and granted the parties joint and equal physical custody on a week-on-week-off basis. In addition, the trial court awarded "permanent joint legal care, custody, and control of the minor children" to both the parties. Also on 9 July 2014, the trial court entered a permanent child support order, in which the trial court reduced plaintiff's monthly support contribution from $5,000.00 to $4,000.00 as a result of the changed custody arrangement. It further required plaintiff to pay $95,520.65 in retroactive child support to defendant for the time period from the date of separation through 30 June 2009.
 

 Because of the parties' substantial combined income, the trial court determined that the presumptive requirements of the child support Guidelines were not applicable. With regard to private school tuition, the trial court found that "[i]t continue[d] to be in the best interest of the minor children to be enrolled at [PDS]," and that plaintiff "is well-able and capable of providing substantial support on behalf of the minor children to maintain that standard of living that they have enjoyed prior to the parties' separation...." Based on its findings, the trial court ordered that plaintiff "be solely responsible for every tuition and expense payment due and payable to [PDS]," but required defendant to reimburse plaintiff for 25% of the tuition expenses going forward. Additionally, plaintiff was required to pay $116,409.18 in reimbursements to defendant for tuition for the 2007-2008, 2008-2009, and 2009-2010 school years paid out of her account and the children's accounts.
 

 Plaintiff timely appealed the permanent custody and support orders, as well as the final equitable distribution order and corresponding QDROs to this Court. Shortly thereafter, defendant timely filed a cross-appeal, challenging the custody, support, and equitable distribution orders, as well.
 

 *20
 

 *143
 

 Discussion
 

 As a general matter, where the trial court sits without a jury, "the judge is required to 'find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment.' "
 
 Coble v. Coble,
 

 300 N.C. 708
 
 , 712,
 
 268 S.E.2d 185
 
 , 188-89 (1980) (quoting N.C.R. Civ. P. 52(a) ). Thus, " 'the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.' "
 
 Oakley v. Oakley,
 

 165 N.C.App. 859
 
 , 861,
 
 599 S.E.2d 925
 
 , 927 (2004) (quoting
 
 Shear v. Stevens Bldg. Co.,
 

 107 N.C.App. 154
 
 , 160,
 
 418 S.E.2d 841
 
 , 845 (1992) ). The findings of fact are supported by competent evidence "even when the record includes other evidence that might support contrary findings."
 
 Static Control Components, Inc. v. Vogler,
 

 152 N.C.App. 599
 
 , 603,
 
 568 S.E.2d 305
 
 , 308 (2002). "The trial court's conclusions of law, however, are reviewed de novo."
 
 Casella v. Alden,
 

 200 N.C.App. 24
 
 , 28,
 
 682 S.E.2d 455
 
 , 459 (2009).
 

 I.
 
 Appeal from Temporary and Interlocutory Orders
 

 Before addressing the parties' appeals from the final orders in these proceedings, we must address plaintiff's appeals from the trial court's 21 February 2011 temporary child support and custody order and the 31 August 2011 interlocutory order denying plaintiff's post-trial motions. Plaintiff acknowledges the well-observed rule that a temporary interlocutory order made moot by virtue of a subsequent permanent order is not reviewable by this Court.
 
 See, e.g.,
 

 Metz v. Metz,
 

 212 N.C.App. 494
 
 , 498,
 
 711 S.E.2d 737
 
 , 740 (2011) (refusing to challenge temporary support order mooted by subsequent permanent order). In an attempt to circumvent this rule, plaintiff cites to
 
 In re A.N.B.,
 

 232 N.C.App. 406
 
 , 408,
 
 754 S.E.2d 442
 
 , 445 (2014) (quoting
 
 Thomas v. N.C. Dep't of Human Res.,
 

 124 N.C.App. 698
 
 , 705,
 
 478 S.E.2d 816
 
 , 821 (1996),
 
 aff'd per curiam,
 

 346 N.C. 268
 
 ,
 
 485 S.E.2d 295
 
 (1997) ), arguing that this Court has a duty to address the issues he raises in these mooted orders because "the 'question involved is a matter of public interest.' "
 

 We do not agree that this matter raises any issue of public interest. Matters of public interest are, for example, matters such as "preventing unwarranted admission of juveniles into [psychiatric] treatment facilities[.]"
 

 Id.
 

 We do not believe that the court-ordered child custody and support arrangements are comparable matters of public interest. Accordingly, the temporary child support order and the interlocutory post-trial order are moot on account of the subsequent entry of the permanent child support order and are not reviewable by this Court.
 

 *144
 
 Plaintiff also seeks review of these orders pursuant to a writ of certiorari under Rule 21(a)(1) of the Rules of Appellate Procedure. However, "it is well-established that where an argument is moot, no appellate review should lie."
 
 In re J.R.W.,
 

 237 N.C.App. 229
 
 , 232,
 
 765 S.E.2d 116
 
 , 119 (2014) (declining to suspend the Rules of Appellate Procedure under Rule 2 when arguments moot),
 
 disc. review denied,
 

 367 N.C. 813
 
 ,
 
 767 S.E.2d 840
 
 (2015). We, therefore, deny plaintiff's request for certiorari.
 

 II.
 
 Child Support
 

 Plaintiff appeals, and defendant cross-appeals, from a number of rulings in the permanent child support order of 9 July 2014. Both parties challenge the trial court's findings of fact and conclusions of law related to the payment of their children's private school tuition, while plaintiff also challenges the findings of fact related to the retroactive and prospective child support awards. Each challenge is addressed in turn below.
 

 A.
 
 Private School Tuition
 

 Plaintiff contends that the trial court erroneously ordered him to pay his children's private school tuition at PDS without making findings of fact as to the children's particular needs for private school pursuant to North Carolina's applicable child support statute. That statute reads:
 

 Payments ordered for the support of a minor child shall be
 
 in such amount as to meet the reasonable needs of the child
 
 for
 
 *21
 
 health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.
 

 N.C. Gen.Stat. § 50-13.4(c) (2015) (emphasis added). The question whether a trial court can require a higher income parent, such as plaintiff, to pay his children's private school tuition without a specific showing that his children need the advantages offered by private schooling is a matter of first impression for this Court. However, we do not agree with plaintiff's contentions that a trial court must find such a specific need prior to ordering a higher income parent to pay this expense as a component of child support.
 

 The trial court made numerous findings in the permanent child support order regarding the parties' respective incomes. The trial court found that as of 2011, plaintiff "was earning at least $522,000/year at PwC," that his "gross income has increased each year since 2004[,]" and
 
 *145
 
 that "[t]here is no reason to assume that [his] gross monthly income will remain at or below $43,000.00 per month for the current fiscal year." The trial court also found that defendant's income in the years from 2007 to 2011 fluctuated from approximately $36,000.00 to $51,000.00. Based on the parties' combined income, the court determined that "[c]hild support in this matter is not subject to the N.C. Child Support Guidelines" and, therefore, that private school tuition was not a "deviation" from the Guidelines or an "extraordinary expense" as set forth in the Guidelines.
 

 The trial court further found that "[p]rior to taking up residence in Charlotte, North Carolina ... Meg and Emilie were enrolled at Providence Day School" and that the youngest child, Lara, "has remained a full-time student at PDS since August of 2007." The court also found that plaintiff "testified that it was his preference that the Smith children continue attending private school [,]" but that he claimed "there are other private schools in the Charlotte region that charge significantly less tuition than PDS ... [which] should be preferred[,]" even though he had not "present[ed] [any] evidence regarding accreditation, curricula or tuition and expenses for these specific alternative schools."
 

 Ultimately, the trial court concluded that the parties were capable of paying for their children's private school tuition based on their respective gross incomes. Furthermore, the trial court concluded that the parties must continue to educate their children in private school "[i]n order to maintain the standard of living to which the minor children are accustomed" and to remain consistent "with the stated intent of both parties that the minor children attend private school versus public school[.]"
 

 Normally, "[t]he court shall determine the amount of child support payments by applying the presumptive guidelines...." N.C. Gen.Stat. § 50-13.4(c). However, when "the parents' combined adjusted gross income is more than $25,000 per month ($300,000 per year), the supporting parent's basic child support obligation cannot be determined by using the child support schedule." N.C. Child Support Guidelines, 2016 Ann. R. N.C. at 50. "The schedule of basic child support may be of assistance to the court in determining a minimal level of child support."
 

 Id.
 

 But, " '[f]or cases with higher combined monthly adjusted gross income, child support should be determined on a case-by-case basis.' "
 
 Taylor v. Taylor,
 

 118 N.C.App. 356
 
 , 362,
 
 455 S.E.2d 442
 
 , 447 (1995) (quoting Guidelines, 1991 Ann. R. N.C.),
 
 rev'd on other grounds,
 

 343 N.C. 50
 
 ,
 
 468 S.E.2d 33
 
 (1996).
 

 Thus, where the parties' income exceeds the level set by the Guidelines, the trial court's support order, on a case-by-case basis,
 
 *146
 
 " 'must be based upon the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to meet the reasonable needs of the child and (2) the relative ability of the parties to provide that amount.' "
 

 Id.
 

 (quoting
 
 Newman v. Newman,
 

 64 N.C.App. 125
 
 , 127,
 
 306 S.E.2d 540
 
 , 542 (1983) ). The determination of a child's needs is "largely measured by the 'accustomed standard of living of the child.' "
 
 Cohen v. Cohen,
 

 100 N.C.App. 334
 
 , 339,
 
 396 S.E.2d 344
 
 , 347 (1990).
 
 *22
 
 Even though the expense of private school has never been specifically addressed in higher income cases, our appellate courts have long recognized that a child's reasonable needs are not limited to absolutely necessary items if the parents can afford to pay more to maintain the accustomed standard of living of the child.
 
 See, e.g.,
 

 Williams v. Williams,
 

 261 N.C. 48
 
 , 57,
 
 134 S.E.2d 227
 
 , 234 (1964) ("In addition to the actual needs of the child, a [parent] has a legal duty to give his [or her] children those advantages which are reasonable considering his [or her] financial condition and his [or her] position in society.");
 
 Loosvelt v. Brown,
 

 235 N.C.App. 88
 
 , 105,
 
 760 S.E.2d 351
 
 , 362 (2014) ("In addition to the actual needs of the child, a father has a legal duty to give his children those advantages which are reasonable considering his financial condition and his position in society.").
 

 Despite this well-established law, plaintiff contends that in order for the trial court to award the expense of private school tuition, it must first find that a child's special needs-for example, a child's health issues or disabilities-require private school and that public school cannot adequately meet such needs. In making this argument, he cites
 
 Biggs v. Greer,
 

 136 N.C.App. 294
 
 ,
 
 524 S.E.2d 577
 
 (2000). This Court in
 
 Biggs
 
 held that
 
 in order to deviate from the Guidelines
 
 and allow for such "extraordinary expenses" as private school tuition, the trial court must make adequate findings relating to the reasonable needs of the child for such extraordinary expenses.
 
 Id.
 
 at 298,
 
 524 S.E.2d at 581
 
 .
 
 Biggs
 
 is inapplicable, however, when, as here, the trial court was not bound by the Guidelines because the parents' income exceeds the level governed by the Guidelines.
 

 Plaintiff also relies on case law that predates the establishment of the presumptive Guidelines to support his argument. He claims that
 
 Brandt v. Brandt,
 

 92 N.C.App. 438
 
 , 444,
 
 374 S.E.2d 663
 
 , 666 (1988),
 
 aff'd per curiam,
 

 325 N.C. 429
 
 ,
 
 383 S.E.2d 656
 
 (1989), is applicable here because it holds that a party fails to show that "private school is a necessary or reasonable expense" when there is "no evidence ... [that a child] could not excel in public school." He also cites to
 
 *147
 

 Evans v. Craddock,
 

 61 N.C.App. 438
 
 , 443,
 
 300 S.E.2d 908
 
 , 912 (1983), and
 
 Falls v. Falls,
 

 52 N.C.App. 203
 
 , 215,
 
 278 S.E.2d 546
 
 , 554-55 (1981) for the same proposition.
 

 While we do not find these cases wholly inapplicable simply because they predate the presumptive Guidelines,
 
 [1]
 
 we also do not find them relevant to this appeal because they do not reflect the parents' accustomed standards or desires in high-income cases. They, therefore, shed little light on the needs of children in higher income families in which "need" is determined based on their "accustomed standard of living," as this Court's decisions in
 
 Loosvelt
 
 and
 
 Williams
 
 require.
 

 In addition, in contrast to this case, in all three cases cited by plaintiff, the parents had not mutually agreed to enroll, and in fact had enrolled, their children in private school before the time of trial.
 
 See
 

 Brandt,
 

 92 N.C.App. at 444
 
 ,
 
 374 S.E.2d at 666
 
 (indicating one party was not consulted prior to child's enrollment in private school by other party);
 
 Evans,
 

 61 N.C.App. at 443
 
 ,
 
 300 S.E.2d at 912
 
 ("On remand, ... [t]he trial judge should also determine if the defendant agreed to pay the tuition....");
 
 Falls,
 

 52 N.C.App. at 215
 
 ,
 
 278 S.E.2d at 555
 
 (acknowledging children were not attending private school and parents' lack of intent to enroll them in private school). Thus, the mutual intent of both parents to educate their children in private school, together with their children's actual enrollment, is a consideration in determining the "accustomed standard of living" of the parties.
 

 In this high-income case, the trial court properly addressed the reasonable needs of the children as measured by their accustomed standard of living, consistent with
 
 Cohen,
 

 100 N.C.App. at 339
 
 ,
 
 396 S.E.2d at 347
 
 . The trial court's findings of fact regarding the children's consistent enrollment in private schools and the parties' continual desire to educate their children in private schools adequately support the court's conclusion
 
 *23
 
 that private schooling is a reasonable need of the children given their accustomed standard of living.
 

 Plaintiff, however, further argues that even though his children had always been enrolled in private school, the payment of the PDS tuition had resulted in "estate depletion." According to plaintiff, they were only able to afford the tuition by using defendant's maternal inheritance. In effect, he challenges the trial court's determination that he is capable of paying his children's tuition. We disagree.
 

 *148
 
 In support of his argument, plaintiff points to his own testimony that upon moving to Charlotte, his children's tuition was paid for at least in part by defendant's separate money from her maternal inheritance. Specifically, plaintiff testified that the tuition "was funded out of salary and Vera's inheritance." He, therefore, claims that because defendant's inheritance is now depleted, he is incapable of affording the tuition payments.
 

 The trial court, however, based its determination that plaintiff is able to pay the tuition expenses on its finding that beginning with the 2007-2008 school year, plaintiff's salary had increased to over $500,000.00 a year and was no less than $43,000.00 a month. The court found that plaintiff's own financial affidavit from 2011 claimed $11,568.00 in monthly expenses for his three children, an amount that included tuition payments of nearly $5,000.00 a month and $5,000.00 in child support payments owed to defendant each month. The trial court also found that plaintiff's other reasonable monthly expenses included $3,700.00 in personal expenses per month and another $3,700.00 in shared family expenses per month. Finally, the trial court found that from the date of separation through 2011, plaintiff had been able to make contributions to his retirement accounts and charitable contributions in the approximate amount of $10,000.00 per month. However, the court concluded that plaintiff's religious contributions of $4,500.00 per month would not be included in his reasonable expenses.
 

 Thus, even though plaintiff points to his own testimony that paying for his children's tuition created a standard of living commensurate with estate depletion, it is apparent that the trial court gave little weight to that testimony and found, to the contrary, that plaintiff contributed personally to his children's tuition prior to separation and that, given his income and reasonable expenses, he can afford to pay for the tuition. Despite plaintiff's contentions, however, the court's findings are supported by the evidence, including his own testimony. Indeed, despite contending in conclusory fashion that the findings regarding his income and expenses are unsupported by competent evidence, plaintiff fails to make any specific argument to support that contention.
 
 [2]
 
 We, therefore, consider those findings binding on appeal. In totaling plaintiff's reasonable monthly expenses, including tuition, and comparing them to the
 
 *149
 
 monthly earnings found by the trial court, we hold that these findings are specific enough to support the conclusion that plaintiff is capable of paying his children's tuition. Whether the parties had previously used defendant's inheritance to pay their children's tuition is, therefore, irrelevant to their present ability to pay.
 

 Accordingly, because the trial court's determinations regarding the reasonable needs of the children to attend private school-as established by their accustomed standard of living and past actions-and plaintiff's ability to pay for this tuition are adequately supported by competent findings of fact, we affirm the trial court's order requiring plaintiff to pay his children's private school tuition.
 

 Plaintiff next contends that the order that he pay retroactive private school tuition to defendant is improper because (1) defendant should not recover money she paid to PDS out of her children's UTMA accounts, (2) the award requires reimbursement of funds paid
 
 *24
 
 outside the pertinent time period for retroactive support, and (3) the permanent support award fails to account for payments he already made to defendant for tuition payments. We address these arguments in sequence.
 

 The trial court found in the permanent child support order that the parties' three children each have a UTMA account at Merrill Lynch of which defendant is the custodian. The support order also found that defendant paid for her three daughters' 2008-2009 and 2009-2010 PDS tuition primarily out of their individual UTMA accounts, in a total amount of $103,614.18. Concluding that plaintiff was responsible for all the tuition expenses for his children for the 2007-2008, 2008-2009, and 2009-2010 school years, the trial court decreed that plaintiff shall reimburse defendant for the $53,810.00 payment made out of the UTMA accounts for the 2008-2009 school year; that plaintiff shall reimburse defendant for the $49,804.18 payment made out of the UTMA accounts for the 2009-2010 school year; and that defendant thereafter shall reimburse each UTMA account on a
 
 pro rata
 
 basis within 90 days from the entry of the permanent support order.
 

 In calculating retroactive child support awards, the trial court must determine "the amount actually expended by [the dependent spouse] which represent[s] the [supporting spouse's] share of support."
 
 Hicks v. Hicks,
 

 34 N.C.App. 128
 
 , 130,
 
 237 S.E.2d 307
 
 , 309 (1977). The dependent spouse "is not entitled to be compensated for support for the children provided by others [.]"
 

 Id.
 

 Notwithstanding this established rule of law, because the trial court ordered that defendant reimburse her children's UTMA accounts upon receipt of the child support award from plaintiff,
 
 *150
 
 we do not agree with plaintiff's first argument that the trial court erred by reimbursing defendant for amounts that she did not pay.
 

 Plaintiff next urges that defendant's claim for retroactive child support improperly included $41,225.18 in tuition payments defendant made on 22 June, 2 November, and 7 December of 2009 because retroactive child support is only recoverable for the amount expended three years prior to the date of filing. He cites to
 
 Napowsa v. Langston,
 

 95 N.C.App. 14
 
 , 21,
 
 381 S.E.2d 882
 
 , 886 (1989), arguing that retroactive child support is recoverable by defendant "(1) to the extent she paid [plaintiff's] share of such expenditures, and (2) to the extent the expenditures occurred three years or less before ... the date she filed her claim for child support." However, the limitation plaintiff is referencing only limits reimbursement to three years prior to the filing of the action.
 
 See
 
 N.C. Gen.Stat. § 1-52(2) (2015). Since defendant filed her claim for retroactive child support on 19 June 2009, the statute of limitation has no application to payments defendant made
 
 after
 
 that date. Indeed,
 
 Napowsa
 
 held that " 'each ... expenditure by the mother creates in her a new right to reimbursement.' "
 
 95 N.C.App. at 21
 
 ,
 
 381 S.E.2d at 886
 
 (quoting
 
 Tidwell v. Booker,
 

 290 N.C. 98
 
 , 116,
 
 225 S.E.2d, 816
 
 , 827 (1976) ).
 

 Lastly, plaintiff argues that Finding of Fact No. 194 in the permanent support order credits him with paying only $5,810.00 in PDS tuition for the 2007-2008 school year. He claims this amount is $3,000.00 too low, as the court determined in Finding of Fact No. 108 that "Plaintiff/Father was credited with one-half (1/2) of payment three (3) (made on November 1, 2007) or $5,810.00 and $3,000.00 of payment four (4) (made on February 1, 2008) from his separate funds." We agree with plaintiff that there is an inconsistency in the trial court's findings, and we, therefore, remand to the trial court for findings of fact resolving this inconsistency and recalculation of the amount owed by plaintiff to defendant in retroactive child support.
 

 Defendant's sole argument with respect to the private school tuition part of the permanent child support order is that the trial court erred in requiring her to reimburse plaintiff for 25% of the PDS tuition. Defendant contends that the trial court failed to make any findings of fact explaining its basis for the 25% figure, which departs from a pro-rata distribution of support requirements based on the parties' respective incomes. We agree.
 

 *25
 
 " 'The ultimate objective in setting awards for child support is to secure support commensurate with the needs of the children and the ability of the [obligor] to meet the needs.' "
 

 *151
 

 Robinson v. Robinson,
 

 210 N.C.App. 319
 
 , 333,
 
 707 S.E.2d 785
 
 , 795 (2011) (quoting
 
 Cauble v. Cauble,
 

 133 N.C.App. 390
 
 , 394,
 
 515 S.E.2d 708
 
 , 711 (1999) ). This objective is fulfilled by making adequate findings regarding the "estates, earnings, conditions, accustomed standard of living ..., the child care and homemaker contributions of each party, [or] other facts of the particular case." N.C. Gen.Stat. § 50-13.4(c).
 

 In this instance, Finding of Fact No. 121 in the permanent support order set out the parties' respective annual incomes from 2007 to 2011. It is apparent from the trial court's findings that plaintiff's income perennially dwarfed defendant's income, accounting for almost 90% of the parties' combined income. The trial court made no other findings of fact that could support its order that defendant pay 25% of the tuition payment when her income accounts for only 10% of the combined income. While the record contains evidence upon which the trial court might justify its award, we agree with defendant that the trial court's determination of the amount she was required to pay is not supported by adequate findings of fact. We, therefore, reverse the child support award, and remand to the trial court for further findings of fact to support its determination.
 

 B.
 
 Retroactive Child Support
 

 Plaintiff also appeals several other aspects of the retroactive child support order apart from the private school tuition. He argues the order (1) lacks adequate factual findings, (2) is marred by internal inconsistencies, and (3) fails to account for payments already made to defendant.
 

 " '[A] party seeking retroactive child support must present sufficient evidence of past expenditures made on behalf of the child, and evidence that such expenditures were reasonably necessary.' "
 
 Loosvelt,
 

 235 N.C.App. at 93
 
 ,
 
 760 S.E.2d at 355
 
 (quoting
 
 Robinson,
 

 210 N.C.App. at 333
 
 ,
 
 707 S.E.2d at
 
 795 ). Recoverable expenditures are those " 'actually expended on the child's behalf during the relevant period.' "
 

 Id.
 

 (quoting
 
 Robinson,
 

 210 N.C.App. at 333
 
 ,
 
 707 S.E.2d at
 
 795 ). Affidavits are acceptable means by which a party can establish these expenditures.
 
 Savani v. Savani,
 

 102 N.C.App. 496
 
 , 502,
 
 403 S.E.2d 900
 
 , 904 (1991). Any "[e]videntiary issues concerning credibility, contradictions, and discrepancies are for the trial court ... to resolve and, therefore, the trial court's findings of fact are conclusive ... if there is competent evidence to support them despite the existence of evidence that might support a contrary finding."
 
 Smallwood v. Smallwood,
 

 227 N.C.App. 319
 
 , 322,
 
 742 S.E.2d 814
 
 , 817 (2013).
 

 Here, the permanent child support award directed plaintiff to pay defendant $95,520.65, "representing the difference between the monthly
 
 *152
 
 cash support ordered ... for the period beginning June 1, 2007 through June, 2009 and the total amount actually paid" during that time period. Plaintiff first argues that the findings of fact regarding this retroactive child support payment are not supported by competent evidence because defendant testified inconsistently as to the numbers sworn to in her financial affidavit and because such numbers were skewed for the relevant time period as a result of the changed custody arrangement. We disagree.
 

 Defendant initially testified in June 2010 that her expense affidavit relevant to retroactive child support for the period of June 2007 to June 2009 was based only on her year-end expenses for 2009, suggesting those expenses were not reflective of actual expenditures during that period. However, defendant adequately explained during the permanent support hearing on 21 December 2011 that the expenses set out in her June 2009 financial affidavit were "the same" as the previous two years' expenses because she "used those two years of expenses to verify ... the numbers [she] was placing on [her] affidavit." She provided an updated affidavit of financial standing on 8 September 2011 corroborating this testimony. Because this inconsistency cited by plaintiff raises only credibility issues to be resolved by the trial court, and evidence before the court otherwise established her expenditures for the
 
 *26
 
 relevant time period, we find that the trial court's findings in this regard were based on competent evidence.
 

 Plaintiff also argues that because the custodial arrangement changed significantly in February 2009, giving defendant increased time with the children, her affidavit based on expenditures made in 2009 does not properly reflect expenditures made from June 2007 until January 2009. However, at the 21 December 2011 hearing, defendant testified repeatedly to the static nature of the shared and individual expenses of her children from the date of separation through 2010 and that she had taken into account any increase or decrease that may have occurred in the two years prior to the filing of her affidavit in June 2009. The trial court made corresponding findings of fact, ultimately concluding that the children's monthly individual and shared expenses totaled $6,285.00. Accordingly, we affirm the trial court's ruling awarding retroactive child support for this period.
 

 As a final matter, plaintiff points out a clerical error in the support order. Finding of Fact No. 183 states that plaintiff "is well able and capable of paying $4,000.00 per month" in retroactive support for the June 2007 to June 2009 time period. However, Finding of Fact No. 193 suggests that the trial court intended this monthly payment to be $5,000.00
 
 *153
 
 for this time period. This intent, which is inconsistent with Finding of Fact No. 183, is reflected in Conclusion of Law No. 14 in the support order, which states that the $4,000.00 per month permanent support payment effective 1 March 2012 "represents a 20% reduction in the amount of child support" plaintiff was paying prior to that date. Accordingly, we remand to the trial court for correction of the clerical error.
 

 Plaintiff's last argument with respect to the retroactive support directive is that the trial court failed to take into account the $43,085.00 payment he made to defendant on 5 October 2007, and therefore its conclusions were not supported by appropriate findings of fact. However, plaintiff testified that the $43,085.00 payment "represented what we computed as her share of the October distribution [of marital assets] minus the expenses we had discussed." Accordingly, we hold the court did not err by failing to credit this amount to plaintiff as a child support payment.
 

 C.
 
 Prospective Child Support
 

 Plaintiff contends that the trial court erred in calculating his prospective child support requirement by failing to make sufficient findings of fact regarding (1) defendant's paternal inheritance and (2) defendant's reasonable monthly expenditures. The trial court's award to defendant of prospective child support in the amount of $4,000.00 per month effective 1 March 2012, a reduction from the temporary child support order, was based on plaintiff's "increased custodial time" with the children, defendant's ability to work additional hours, plaintiff's "substantial earned income" and defendant's earned income, the "needs and expenses of the minor children and their accustomed standard of living," and, lastly, "the passive income that Defendant/Mother can realize from her non-retirement assets and accounts[.]"
 

 "[T]he trial court is
 
 required
 
 to make findings of fact with respect to the factors listed in [ N.C. Gen.Stat. § 50-13.4(c) ]," including findings on "the parents' incomes,
 
 estates,
 
 and present reasonable expenses in order to determine their relative ability to pay."
 
 Sloan v. Sloan,
 

 87 N.C.App. 392
 
 , 394,
 
 360 S.E.2d 816
 
 , 818, 819 (1987) (emphasis added). "[T]o determine the relative abilities of the parties to provide support, the court 'must hear evidence and make findings of fact on the parents' income[s], estates (e.g., savings; real estate holdings, including fair market value and equity; stocks; and bonds) and present reasonable expenses.' "
 
 Taylor,
 

 118 N.C.App. at 362-63
 
 ,
 
 455 S.E.2d at 447
 
 (quoting
 
 Little v. Little,
 

 74 N.C.App. 12
 
 , 20,
 
 327 S.E.2d 283
 
 , 290 (1985) ). "At the very least, a trial court must determine what major assets comprise the parties' estates and their approximate value."
 

 *154
 

 Sloan,
 

 87 N.C.App. at 395
 
 ,
 
 360 S.E.2d at
 
 819 ;
 
 see also
 

 Sloop v. Friberg,
 

 70 N.C.App. 690
 
 , 695-96,
 
 320 S.E.2d 921
 
 , 925 (1984) (holding that finding of fact regarding party's total estate is "required").
 

 *27
 
 Throughout the child support and equitable distribution proceedings, both parties put on evidence of the sizeable inheritance defendant had received from her father after his passing following the date of separation. Defendant testified to being the sole heir of her father's estate, which comprised a 401(k) plan worth in excess of $800,000.00, an IRA worth approximately $60,000.00, a Certificate of Deposit worth approximately $100,000.00, a bank account with Bank Corp. South worth approximately $208,000.00, various other bank accounts worth anywhere from $7,000.00 to $13,000.00, three vehicles, and two parcels of real estate with a tax value in excess of $103,000.00. Although defendant claimed that some of this money is inaccessible or "subject to tax" if she were to withdraw it immediately, she also admitted that she received an initial distribution of $30,000.00 from her father's 401(k), and would continue receiving yearly distributions from this account, as well as "approximately $700.00 a month" from her mother's pension, which passed to her through her father's estate. Despite this evidence, the trial court's findings of fact regarding permanent child support erroneously lack any mention of these assets other than a vague allusion to her "non-retirement assets and accounts" as a partial impetus for reducing the monthly award from $5,000.00 to $4,000.00 in the permanent support order.
 

 Defendant argues that notwithstanding these omissions, the trial court considered these components of her estate in calculating the child support award and that, as a result, plaintiff has failed to show prejudicial error. Defendant also claims that the pre-Guidelines cases plaintiff cites requiring findings on defendant's estate are irrelevant here because post-Guidelines cases suggest that specific findings of one's estate are only required when a party requests a deviation from the Guidelines. We disagree with both contentions.
 

 First, the post-Guidelines cases that defendant cites are not high-income cases, but rather are cases controlled by the Guidelines and, therefore, irrelevant to the issues in this case. Second, defendant's paternal inheritance is both voluminous and convoluted in nature. There are a number of issues regarding her inherited estate-including monthly distributions and tax implications-that impact defendant's ability to immediately utilize this estate to pay her children's monthly expenses. Without specific findings of fact addressing this inheritance, we cannot determine whether the trial court gave due regard to the factors
 
 *155
 
 enumerated in N.C. Gen.Stat. § 50-13.4(c). Consequently, we reverse the prospective child support award and remand for findings of fact relating to defendant's paternal inheritance.
 

 Plaintiff next argues that the trial court's determinations regarding the reasonableness of his expenses, particularly his monthly religious contributions and 401(k) loan repayment expenses, were not supported by any finding of fact. We disagree. The trial court detailed in its findings of fact plaintiff's total individual monthly expenditures as of the June 2010 hearings and his personal expenses as of the date of the permanent child support order. In each finding, the trial court determined that plaintiff's monthly religious contributions totaled more than half of his monthly expenditures, and if excluded, would result in plaintiff having personal expenses of only $3,700.00 each month. The trial court also made a finding that of plaintiff's $22,839.33 of itemized monthly deductions, "$955.00 is a loan payment that Plaintiff/Father pays to himself as a result of borrowing against one of his retirement accounts" and that such an amount "should not be itemized as a deduction."
 

 When determining the reasonable needs and expenses of the parties in domestic actions, "absent contrary indications in the record, there is no requirement that a specific conclusion as to the reasonableness of such expenses be made[.]"
 
 Byrd v. Byrd,
 

 62 N.C.App. 438
 
 , 441,
 
 303 S.E.2d 205
 
 , 208 (1983). Where there are no contrary indications in the record, "a lack of a specific conclusion as to reasonableness will not necessarily be held for error[.]"
 
 Coble,
 

 300 N.C. at 714
 
 ,
 
 268 S.E.2d at 190
 
 . Although there was no specific conclusion as to the reasonableness of plaintiff's religious contributions or his $955.00 loan repayment, the trial court's ultimate conclusions as to plaintiff's
 
 *28
 
 reasonable expenses were supported by its findings of fact, which were in turn supported by competent evidence. We, therefore, affirm those aspects of the trial court's permanent support order.
 

 III.
 
 Custody
 

 A.
 
 Admissibility of Dr. Neilsen's Expert Testimony
 

 Defendant first contends that the trial court erred in admitting Dr. Linda Neilsen's expert testimony and corresponding exhibits in the areas of "adolescent psychology, father-daughter relationships and shared parenting, and scientific research on father-daughter relationships and shared parenting." We note that "trial courts are afforded 'wide latitude of discretion when making a determination about the admissibility of expert testimony' " and such a decision "will not be reversed on appeal absent a showing of abuse of discretion."
 

 *156
 

 Howerton v. Arai Helmet, Ltd.,
 

 358 N.C. 440
 
 , 458,
 
 597 S.E.2d 674
 
 , 686 (2004) (quoting
 
 State v. Bullard,
 

 312 N.C. 129
 
 , 140,
 
 322 S.E.2d 370
 
 , 376 (1984) ).
 

 Our Supreme Court has established "a three-step inquiry for evaluating the admissibility of expert testimony: (1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?"
 

 Id.
 

 (internal citations omitted). Here, defendant challenges both Dr. Neilsen's competency as an expert and the relevancy of her testimony.
 

 We first address defendant's challenge to Dr. Neilsen's competency to testify to matters of clinical psychology and, specifically, facts relating to the parties' relationships with their children. Dr. Neilsen testified that she was as a professor of adolescent psychology at Wake Forest University and had 15 years of experience researching shared parenting and father-daughter relationships. The trial court, upon qualifying Dr. Neilsen as an expert, made clear that she was not qualified "to talk about any specifics of this case or these children." Accordingly, Dr. Neilsen testified to, among other things, "research regarding young adults who have grown up in shared parenting families and sole parenting families...." When referring to "these" children, her testimony focused on the children within this research, and not the parties' children specifically.
 

 "Under the North Carolina Rules of Evidence, a witness may qualify as an expert by reason of 'knowledge, skill, experience, training, or education,' where such qualification serves as the basis for the expert's proffered opinion."
 

 Id.
 

 at 461
 
 ,
 
 597 S.E.2d at 688
 
 (quoting N.C.R. Evid. 702(a) ). Given Dr. Neilsen's extensive experience and education in research related to shared parenting relationships, and the trial court's limitation of her testimony to those areas, we hold that the trial court did not err in concluding that Dr. Neilsen was qualified to testify as an expert witness.
 

 We next address defendant's arguments that Dr. Neilsen's testimony was irrelevant. Relevant evidence is defined as evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. " '[I]n judging relevancy, it should be noted that expert testimony is properly admissible when such testimony can assist the [trier of fact] to draw certain inferences from facts because the expert is better qualified than the [trier of fact] to draw such inferences.' "
 
 Howerton,
 

 358 N.C. at 462
 
 ,
 
 597 S.E.2d at 688-89
 
 (quoting
 
 *157
 

 State v. Goode,
 

 341 N.C. 513
 
 , 529,
 
 461 S.E.2d 631
 
 , 641 (1995) ). Furthermore, a trial court has inherent authority to limit the admissibility of expert testimony under Rule 403 of the Rules of Evidence.
 
 Howerton,
 

 358 N.C. at 462
 
 ,
 
 597 S.E.2d at 689
 
 . Rule 403 provides that relevant evidence may nonetheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
 

 We find Dr. Neilsen's testimony regarding research on shared parenting arrangements was relevant to the custodial arrangement in this case because it assisted the trial court in deciding what was in the best interests of the
 
 *29
 
 children. As the trial court found in Finding of Fact No. 90, based on Dr. Neilsen's testimony, "six (6) monthly overnights is grossly inadequate for a parent to participate in shared residential parenting and to maintain an engaged, authoritative relationship with the minor children...."
 

 Defendant has not shown that the trial court erred in deciding that the probative nature of the testimony was not outweighed by a danger of unfair prejudice, confusion of the issues, or misleading the trier of fact. Other than the fact that the trial court assigned significant weight to Dr. Neilsen's testimony in altering the final custody determination, defendant fails to point to any way in which the testimony unfairly prejudiced defendant or confused or misled the trial court. Although a party "may disagree with the trial court's credibility and weight determinations, those determinations are solely within the province of the trial court."
 
 Brackney v. Brackney,
 

 199 N.C.App. 375
 
 , 391,
 
 682 S.E.2d 401
 
 , 411 (2009).
 

 Accordingly, we find that the trial court did not abuse its discretion in admitting Dr. Neilsen's testimony or the corresponding authenticated exhibits. Furthermore, to the extent defendant argues that the findings in the custody order based on Dr. Neilsen's testimony are unsupported by competent evidence, we disagree and affirm the trial court.
 

 B.
 
 Award of Equal Physical Custody
 

 Defendant next argues that the trial court's findings of fact that underlie the order's provision for an equal custody arrangement are unsupported by competent evidence because they arbitrarily ignore or alter the findings of fact in the temporary custody order. Defendant essentially contends that without a showing of changed circumstances prior to the permanent custody order, the trial court was not permitted to deviate from the findings in the temporary order. We disagree.
 

 *158
 
 "If a child custody order is temporary in nature and the matter is again set for hearing, the trial court is to determine [permanent] custody using the best interests of the child test without requiring either party to show a substantial change of circumstances."
 
 LaValley v. LaValley,
 

 151 N.C.App. 290
 
 , 292,
 
 564 S.E.2d 913
 
 , 915 (2002). Therefore, " '[t]he rule established by section 50-13.7(a) and developed within our case law requires a showing of changed circumstances only where an order for permanent custody already exists.' "
 
 Lamond v. Mahoney,
 

 159 N.C.App. 400
 
 , 404,
 
 583 S.E.2d 656
 
 , 659 (2003) (quoting
 
 Regan v. Smith,
 

 131 N.C.App. 851
 
 , 853,
 
 509 S.E.2d 452
 
 , 454-55 (1998) ).
 

 Subsequent to the trial court's entry of the Order for Temporary Custody and Temporary Child Support on 21 February 2011, hearings were held on the issues of custody and child support in September of 2011. Because the 21 February 2011 order was temporary, the trial court was not required to find changed circumstances in order to deviate from that earlier order in entering the 9 July 2014 permanent child support and custody order.
 

 Next, defendant challenges the trial court's Findings of Fact Nos. 62, 70, 77, 80, and 85 in the permanent custody order. Finding of Fact No. 62 states that when the parties first daughter was born, "Plaintiff/Father took a couple of days off from work at her birth and the month of December to help care for [her]" and that at this time defendant "reduced her work schedule by approximately half." Finding of Fact No. 70 states that both parties "had a loving relationship with the minor children during the marriage and were actively involved in the minor children's daily care and activities ...," while Finding of Fact No. 77 states that "Plaintiff/Father has not been precluded by his work and travel schedule from maintaining an active and involved relationship with the minor children since the date of separation." In addition, Findings of Fact Nos. 80 and 85 state, respectively, that "Defendant/Mother is actively involved in the minor children's daily care and activities" and that the equal custody arrangement "during the summer of 2011 worked very well for the minor children as well as the parties...."
 

 Defendant argues that Finding of Fact No. 62 arbitrarily deletes the portion of the corresponding finding from the temporary
 
 *30
 
 order that states: "With the exception of December 1996, Mother has been the primary custodian of Meg since her birth." Because the trial court was not bound to repeat the findings of fact from the temporary order, but rather could determine what findings it found most pertinent or which evidence was entitled to greater weight, defendant has presented no legitimate basis for questioning Finding of Fact No. 62.
 
 *159
 
 We also find that the record contains ample evidence to support Findings of Fact Nos. 70, 77, and 80, despite the fact that there may also be evidence to the contrary which supported the temporary order. Competent evidence suggests that plaintiff has played a major part in his children's upbringing both before and after the date of separation. During the marriage, the evidence indicated that plaintiff made efforts to make it home for dinner, bathe his children, and put them to bed. Furthermore, the trial court heard evidence that plaintiff spent significant amounts of time both before and after the date of separation participating in his daughters' extracurricular activities. Because these findings were based on competent evidence, even though there was evidence to the contrary, we reject defendant's challenges to Findings of Fact Nos. 70, 77, and 80.
 

 As a final matter, we note that defendant has no basis for contesting Finding of Fact No. 85 as unsupported by the evidence because it is based directly on her testimony that she believed "splitting the summer custody has worked out very well." We therefore, hold that these findings of fact are supported by competent evidence and that they furthermore support the conclusion of the trial court that an equally shared custodial arrangement is in the best interests of the children.
 

 C.
 
 Award of Joint Legal Custody
 

 Plaintiff essentially repeats his assault on the trial court's order requiring him to pay his children's private school tuition by arguing that such an order erroneously contradicts the trial court's grant of "permanent joint legal and physical care, custody, and control of the minor children [.]" Specifically, plaintiff points to the fact that the permanent child custody order granting the parties joint legal custody requires that "Plaintiff/Father and Defendant/Mother shall make joint decisions on all major issues affecting the health, education, and general welfare of the minor children, including but not limited to educational issues...." However, the order also concludes that "[i]t continues to be in the best interest of the minor children to be enrolled at Providence Day School."
 

 This Court has held that legal custody "refer[s] generally to the right and responsibility to make decisions with important and long-term implications for a child's best interest and welfare."
 
 Diehl v. Diehl,
 

 177 N.C.App. 642
 
 , 646,
 
 630 S.E.2d 25
 
 , 27 (2006). Although our General Assembly has not defined "joint legal custody," this omission "implies a legislative intent to allow a trial court 'substantial latitude in fashioning a joint [legal] custody arrangement,' "
 
 Id.
 
 at 647,
 
 630 S.E.2d at 28
 
 (quoting
 
 Patterson v. Taylor,
 

 140 N.C.App. 91
 
 , 96,
 
 535 S.E.2d 374
 
 , 378 (2000) ),
 
 *160
 
 so long as the court "focus[es] on the best interests and welfare of the child [.]"
 
 Patterson,
 

 140 N.C.App. at 96
 
 ,
 
 535 S.E.2d at 378
 
 .
 

 Plaintiff relies on
 
 Diehl
 
 in arguing that the trial court erred in "simultaneously award[ing] both parties joint legal custody, but stripp[ing] [plaintiff] of all decision-making authority" regarding where the children were enrolled in school.
 
 177 N.C.App. at 646
 
 ,
 
 630 S.E.2d at 28
 
 . However, in
 
 Diehl,
 
 this Court reversed the trial court's order because, although it gave both parties joint legal custody, it granted primary decision-making authority on all issues to one parent.
 

 Id.
 

 Nothing in
 
 Diehl
 
 limits the authority of the trial court to decide what is in the best interests of the children if there is a conflict between the parents. The trial court here did not violate
 
 Diehl
 
 by awarding joint custody, while simultaneously giving one parent primary decision-making authority over the children's schooling. Instead, the trial court awarded joint legal custody, but exercised its authority, given the disagreement between the parents, to determine that it was in the best interests of the children to remain enrolled at PDS. This determination was adequately supported by findings of fact that the
 
 *31
 
 children had been enrolled exclusively at PDS, that they had excelled at PDS, and that both parents preferred private school over public school. Because plaintiff does not challenge these findings of fact, they are binding on appeal and amply support the trial court's conclusion that it is in the best interests of the children to continue attending PDS.
 

 IV.
 
 Equitable Distribution
 

 A.
 
 Defendant's Paternal Inheritance as a Distributional Factor
 

 Plaintiff asserts that the trial court committed reversible error by failing to make findings of fact and corresponding conclusions of law relating to defendant's paternal inheritance of nearly $1.25 million as a distributional factor. We agree.
 

 In an equitable distribution action, N.C. Gen.Stat. § 50-20(c)(1) (2015) provides that one of the factors the court "shall" consider in making an equitable division of property is "[t]he income,
 
 property,
 
 and liabilities of each party at the time the division of property is to become effective." (Emphasis added.) "[W]hen evidence of a particular distributional factor is introduced, the court must consider the factor and make an appropriate finding of fact with regard to it."
 
 Fox v. Fox,
 

 114 N.C.App. 125
 
 , 135,
 
 441 S.E.2d 613
 
 , 619 (1994).
 

 Here, the trial court erroneously made no mention of defendant's paternal inheritance in the final equitable distribution order. Defendant
 
 *161
 
 attempts to justify the trial court's failure to specifically address this inheritance by citing a conclusion in the order that states: "The Court notes that a number of factors which relate to the distributional factors to be considered by the Court ... are found in other sections of the findings of fact herein.... [This] does not mean that the Court did not consider them as distributional factors." However, this general conclusion is simply not adequate to compensate for the total lack of findings to address defendant's paternal inheritance.
 
 See
 

 Rosario v. Rosario,
 

 139 N.C.App. 258
 
 , 262,
 
 533 S.E.2d 274
 
 , 276 (2000) ("[A] finding stating that the trial court has merely given 'due regard' to the section 50-20 factors is insufficient as a matter of law.").
 

 Defendant also argues that because the inheritance is not a specifically enumerated factor in N.C. Gen.Stat. § 50-20, the court is not required to make such specific findings. Contrary to defendant's arguments, we find that defendant's inheritance qualifies as "property." Accordingly, we reverse the order and remand for findings of fact regarding defendant's paternal inheritance.
 

 B.
 
 Amendment of the Equitable Distribution Order
 

 Defendant also challenges the order granting plaintiff's motion to amend the 22 July 2013 equitable distribution order pursuant to Rules 52 and 59 of the Rules of Civil Procedure. In response, plaintiff claims that defendant failed to give proper notice of appeal of this order pursuant to Rule 3(d) of the Rules of Appellate Procedure because defendant's notice of cross-appeal only designated the amended equitable distribution order entered on 20 November 2013 and failed to designate the simultaneously-entered order granting plaintiff's Rule 52 and 59 post-trial motions.
 

 Rule 3(d) requires that a notice of appeal "designate the judgment or order from which appeal is taken...." If the court does not have proper notice, it will not have jurisdiction over the matter.
 
 Von Ramm v. Von Ramm,
 

 99 N.C.App. 153
 
 , 156,
 
 392 S.E.2d 422
 
 , 424 (1990). However, there are exceptions to this rule that allow us to liberally construe a notice of appeal. The first is that " 'a mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be
 
 fairly inferred
 
 from the notice and the appellee is not misled by the mistake.' "
 
 Id.
 
 at 156-57,
 
 392 S.E.2d at 424
 
 (quoting
 
 Smith v. Indep. Life Ins. Co.,
 

 43 N.C.App. 269
 
 , 274,
 
 258 S.E.2d 864
 
 , 867 (1979) ). "Second, if a party technically fails to comply with procedural requirements in filing papers with the court, the court may determine
 
 *162
 
 that the party complied with the rule if the party accomplishes
 
 *32
 
 the
 
 'functional equivalent'
 
 of the requirement."
 
 Id.
 
 at 157,
 
 392 S.E.2d at 424
 
 (quoting
 
 Torres v. Oakland Scavenger Co.,
 

 487 U.S. 312
 
 , 317,
 
 108 S.Ct. 2405
 
 , 2409,
 
 101 L.Ed.2d 285
 
 , 291 (1988) ).
 

 Neither of these exceptions is applicable here. The second exception is clearly inapplicable because defendant actually complied with all the procedural requirements of filing her notice of appeal. The first exception is also inapplicable as suggested in
 
 Von Ramm
 
 and
 
 Chee v. Estes,
 

 117 N.C.App. 450
 
 ,
 
 451 S.E.2d 349
 
 (1994), two cases with circumstances analogous to those here. In
 
 Chee,
 
 the trial court found that because the plaintiff had noticed an appeal "from the judgment entered in accordance with the verdict ... it cannot be fairly inferred from the notice that plaintiffs intended as well to appeal the denial of their motion for new trial."
 

 Id.
 

 at 452
 
 ,
 
 451 S.E.2d at 351
 
 . The converse occurred in
 
 Von Ramm,
 
 where the appellant noticed appeal from the judgment denying a Rule 59 motion, but this Court found it could not fairly infer from the notice of appeal the appellant's intent to appeal the order underlying the appellant's Rule 59 motion.
 
 99 N.C.App. at 157
 
 ,
 
 392 S.E.2d at 425
 
 .
 

 Similarly, here, defendant clearly included the Amended Judgment and Order regarding equitable distribution in her notice of appeal, but failed to include the order entered granting plaintiff's Rule 52 and 59 motions. Consistent with
 
 Von Ramm
 
 and
 
 Chee,
 
 we hold that we cannot fairly infer defendant's intent to appeal the order granting plaintiff's Rule 52 and 59 motions and, therefore, we do not have jurisdiction to address the issues raised by defendant on appeal regarding the grant of plaintiff's motion. As defendant has not requested we review these issues pursuant to a petition for writ of certiorari, we also decline to review these issues under Rule 21 of the Rules of Appellate Procedure.
 

 C.
 
 Plaintiff's Post-Separation Payments Towards the Marital Debt
 

 Plaintiff contends the trial court improperly classified two debt payments in the final Equitable Distribution Order. First, plaintiff claims the trial court failed to designate as divisible property in its findings of fact plaintiff's post-separation debt payments in the amount of $101,441.00 towards the marital mortgage, property taxes, homeowners' insurance, repairs, and neighborhood residence fees. Second, plaintiff claims the trial court also erred in failing to account for $11,764.00 in country club dues as divisible property.
 

 The final equitable distribution order found that the parties stipulated that upon the sale of the marital home, each would receive half of its net equity, defined as "the gross sales price less mortgage payoffs,
 
 *163
 
 realtor commissions, tax prorations, revenue stamps, homeowners' association dues, mutually agreed upon repairs, and other closing costs directly attributable to the sellers...." The trial court later concluded that "[b]y entering into the referenced Stipulations, the parties have fully and finally resolved any and all claims arising out of each party's marital and, separate and/or divisible property interests in and into the marital residence."
 

 The trial court further found that while plaintiff was responsible for all mortgage fees and other expenses relating to the marital home from the date of separation until the date the marital residence was sold, plaintiff lived in the house, but did not pay defendant her share of the rental value, which was no less than $3,500.00 per month. This value, the trial court concluded, exceeded the expenditures that plaintiff incurred on a monthly basis, therefore leaving "no divisible property interest [in the marital home] to be valued, classified, and/or awarded in this Judgment."
 

 In regard to the parties' country club membership, the trial court found that "[t]he Ballantyne Country Club's membership was in Plaintiff/Husband's name [,]" that "the initiation fee was paid from a portion of Defendant/Wife's inheritance[,]" and that after the date of separation, defendant "had no right to utilize the facilities ... unless she was a guest of Plaintiff/Husband." The trial court also made a finding that the membership was sold and transferred along with the marital residence, which was "divided equally between the parties" pursuant to the parties' stipulations. In conclusion, the trial court
 
 *33
 
 found there was "no divisible property interest ... to take into account with regard to any monthly dues or assessments that Plaintiff/Husband may have incurred and paid to Ballantyne Country Club."
 

 It is well settled that "divisible property includes '[i]ncreases
 
 and decreases
 
 in marital debt and financing charges and interest related to marital debt.' "
 
 Warren v. Warren,
 

 175 N.C.App. 509
 
 , 517,
 
 623 S.E.2d 800
 
 , 805 (2006) (quoting N.C. Gen.Stat. § 50-20(b)(4)(d) (2003) ). Furthermore, "mortgage payments and payment of property taxes, have been treated by this Court as payments made towards a marital debt."
 
 Smith v. Smith,
 

 111 N.C.App. 460
 
 , 510,
 
 433 S.E.2d 196
 
 , 226 (1993),
 
 rev'd in part on other grounds,
 

 336 N.C. 575
 
 ,
 
 444 S.E.2d 420
 
 (1994).
 

 It is also true that "[i]n equitable distribution actions, our courts favor
 
 written stipulations
 
 which are duly executed and acknowledged by the parties."
 
 Fox,
 

 114 N.C.App. at 132
 
 ,
 
 441 S.E.2d at 617
 
 . Stipulations are treated as "judicial admissions which, unless limited as to time or application, continue in full force
 
 for the duration of the controversy.
 
 "
 
 Id.
 
 at 131,
 
 441 S.E.2d at 617
 
 .
 

 *164
 
 Plaintiff makes general assertions that the trial court's findings of fact regarding the classification of these marital debts are unsupported by competent evidence, but fails to point to any specific evidence that suggests they are erroneous. As such, they are binding on appeal. We further hold that these findings adequately support the trial court's corresponding conclusions of law that plaintiff has no divisible property interest in the payments made towards the marital residence or the country club membership. This is evident because after the date of separation and until these interests were sold, defendant was effectively barred from realizing any benefit from these marital interests. Furthermore, the stipulations referenced by the trial court indicate that the net equity in the marital residence, including the country club membership, was split evenly between the parties, thereby resolving all claims arising out of the interests in the marital residence. Accordingly, we affirm this portion of the final equitable distribution order.
 

 D.
 
 Valuation of Plaintiff's Partnership Interest
 

 Plaintiff lastly argues that the trial court failed to make appropriate findings of fact regarding the valuation methodology used for valuing plaintiff's PwC partnership interest. Here, the trial court examined at length both parties' valuation methods, and the proffered evidence supporting them. Although it ultimately questioned "the accuracy and validity of both parties' methods of computing the value of Plaintiff/Husbands' partnership interest in PricewaterhouseCoopers, LLP," the trial court adopted defendant's methodology after concluding that it "appears to be the most appropriate of the two." The court arrived at a date of separation value of $94,118.00 by taking the net capital account balance ("CAB") as of the date of separation and subtracting the outstanding loan balance owed to PwC as of the date of separation. The parties do not dispute this outstanding loan balance of $93,190.00. The trial court found from defendant's evidence that the CAB is impacted by three different numbers: "(1) Capital contributions during the Time Period in question, (2) increases in capital (shares of earned income [) ] during the Time Period, and (3) decreases to capital (mainly withdrawals in distributions made to the partner[) ] during the Time Period[.]" Applying these factors, the trial court arrived at a date of separation net CAB of $187,308.00. Subtracting the undisputed outstanding loan balance from this amount, the trial court concluded plaintiff's partnership valuation totaled $94,118.00.
 

 "If there is 'no single best approach to valuing' an asset, '[t]he task of [this Court] on appeal is to determine whether the approach used by the trial court reasonably approximated' the value of the asset at the
 
 *165
 
 date of separation."
 
 Fountain v. Fountain,
 

 148 N.C.App. 329
 
 , 338,
 
 559 S.E.2d 25
 
 , 32 (2002) (quoting
 
 Poore v. Poore,
 

 75 N.C.App. 414
 
 , 419,
 
 331 S.E.2d 266
 
 , 270 (1985) ). If it appears that " 'the trial court reasonably approximated the net value of the [asset] ... based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed.' "
 

 Id.
 

 (quoting
 
 *34
 

 Poore,
 

 75 N.C.App. at 422
 
 ,
 
 331 S.E.2d at
 
 272 ). Although plaintiff urges that the trial court should have adopted his methodology rather than defendant's, the trial court's adopted approach appears to apply sound techniques and relies upon competent evidence to "reasonably approximate [ ]" the value of plaintiff's PwC partnership interest. Plaintiff has, therefore, failed to demonstrate that the trial court erred in valuing his partnership interest.
 

 Conclusion
 

 We affirm the trial court's custody order. We further affirm the trial court's child support order requiring plaintiff to pay his children's private school tuition at PDS in full upon due according to a payment plan allowed by PDS on a prospective basis until changed circumstances or further review. However, because we find that the trial court's orders regarding child support and equitable distribution were not fully supported by appropriate findings of fact, we reverse these orders and remand for further findings of fact as to the following: (1) defendant's paternal inheritance, both as to the child support and equitable distribution orders, (2) defendant's ability to reimburse plaintiff for 25% of their children's PDS tuition, (3) the clerical error in Finding of Fact No. 183 of the child support order, erroneously requiring plaintiff pay $4,000.00 per month to defendant in child support for the period from 1 June 2007 through June 2009, and (4) the inconsistency between Findings of Fact Nos. 108 and 194 in the child support order regarding plaintiff's payment of private school tuition for the 2007-2008 school year. We leave the decision regarding whether to hear additional evidence to the sound discretion of the trial judge.
 

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 

 Judges BRYANT and TYSON concur.
 

 [1]
 

 "Before the guidelines, the law referred to the needs of the child as the basis of the award; therefore, pre-guidelines cases are instructional." Suzanne Reynolds, 2
 
 Lee's North Carolina Family Law
 
 § 10.16, at 542 n. 132 (5th. ed.2015).
 

 [2]
 

 Plaintiff specifically challenges the findings that his religious contributions are not reasonable expenses. We address those arguments
 
 infra
 
 as plaintiff's arguments in that regard relate to prospective child support and not to his ability to pay his children's tuition. Thus, he fails to argue effectively here how the trial court's calculations of his income and expenses preclude him from paying his children's tuition.