NO. COA13-554

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

IN THE MATTER OF:
A.N.B.

                              Moore County
                              No. 12 SPC 444J

Appeal by Respondent from order entered 29 October 2012 by Judge Don W. Creed, Jr. in District Court, Moore County. Heard in the Court of Appeals 5 November 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General M. Elizabeth Guzman, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Hannah Hall, for Respondent-Appellant.*

McGEE, Judge.

A.N.B. ("Respondent"), a minor, was voluntarily admitted by his guardian to Jackson Springs Treatment Facility ("Jackson Springs") on 2 October 2012. Jackson Springs is a secure twenty-four hour, or inpatient, psychiatric treatment facility. Respondent was assessed by Freida Green ("Green") on 2 October 2012, and Green filed an evaluation for admission on the following day. Respondent was appointed counsel on 4 October 2012.

Respondent moved for funds to hire a psychiatric expert on 8 October 2012. A hearing was conducted on 15 October 2012 to determine if the trial court concurred in Respondent's admission to Jackson Springs. At the 15 October hearing, the trial court deferred ruling on Respondent's 8 October 2012 motion for funds, and continued the matter until 29 October 2012 to allow time for Respondent's attorney to interview experts from Jackson Springs. At the 29 October 2012 hearing, the trial court denied Respondent's 8 October 2012 motion for funds to hire an expert. Two witnesses from Jackson Springs, Green and Leah McCallum ("McCallum"), were allowed to testify as experts at the hearing. The trial court, by order entered 29 October 2012, concurred with the voluntary admission of Respondent to Jackson Springs, and Respondent's admission at Jackson Springs was continued for ninety days, the statutory maximum. Respondent appeals.

*Appealability*

The order continuing Respondent's admission at Jackson Springs for ninety days was entered on 29 October 2012. This meant the order expired in late January 2013. Because Respondent is not currently being affected by the 29 October 2012 order, this appeal would normally be dismissed as moot. "'The general rule is that an appeal presenting a question which has become moot will be dismissed.'" *Thomas v. N.C. Dept. of Human Resources*, 124 N.C.

App. 698, 705, 478 S.E.2d 816, 820 (1996) (citation omitted). However, there are exceptions to this general rule, including "that courts may review cases that are otherwise moot but that are 'capable of repetition, yet evading review[,]'" and "that the court has a 'duty' to address an otherwise moot case when the 'question involved is a matter of public interest.'" *Id*. at 705, 478 S.E.2d at 820-21 (citations omitted).

Because orders of voluntary admission of a minor to a twenty-four hour psychiatric treatment facility can only be for a maximum length of ninety days, N.C. Gen. Stat. § 122C-224.3(g) (2013), we hold that appeal from orders of voluntary admission of a minor to a twenty-four hour facility falls into the "capable of repetition, yet evading review" exception. Because of the State's great interest in preventing unwarranted admission of juveniles into these treatment facilities, we further hold that appeal from these orders falls into the public policy exception. This appeal is properly before us.

## I.

The issues on appeal are whether: (1) the trial court erred by denying Respondent's motion for funds to hire an expert, (2) the trial court abused its discretion by qualifying two witnesses as experts, (3) the trial court erred by allowing certain expert opinion testimony, (4) Respondent's continued admission to Jackson

Springs was contrary to law because a medical examination should have been performed on Respondent within twenty-four hours of admission and, (5) the trial court's findings of fact were insufficient to support its conclusions and order.

II.

Respondent first argues that the trial court abused its discretion in denying Respondent's motion for funds to hire an expert witness.  We disagree.

> It is State policy to encourage voluntary admissions to facilities.  It is further State policy that no individual shall be involuntarily committed to a 24-hour facility unless that individual is mentally ill or a substance abuser and dangerous to self or others.  All admissions and commitments shall be accomplished under conditions that protect the dignity and constitutional rights of the individual.

N.C. Gen. Stat. § 122C-201 (2013).  Commitment hearings are civil proceedings.  *In re Underwood*, 38 N.C. App. 344, 347, 247 S.E.2d 778, 780 (1978).  Voluntary admission of minors is covered by N.C. Gen. Stat. § 122C-221:

> Except as otherwise provided in this Part, a minor may be admitted to a facility if the minor is mentally ill or a substance abuser and in need of treatment.  Except as otherwise provided in this Part, the provisions of G.S. 122C-211 shall apply to admissions of minors under this Part.  Except as provided in G.S. 90-21.5, in applying for admission to a facility, in consenting to medical treatment when consent is required, and in any other legal procedure under this Article, the

legally responsible person shall act for the minor.

N.C. Gen. Stat. § 122C-221(a) (2013).

Respondent was provided counsel as required. "Within 48 hours of receipt of notice that a minor has been admitted to a 24-hour facility wherein his freedom of movement will be restricted, an attorney shall be appointed for the minor in accordance with rules adopted by the Office of Indigent Defense Services." N.C. Gen. Stat. § 122C-224.1(a) (2013). N.C. Gen. Stat. § 7A-498.3 states:

> (a) The Office of Indigent Defense Services shall be responsible for establishing, supervising, and maintaining a system for providing legal representation and related services in the following cases:
>
> (1) Cases in which an indigent person is subject to a deprivation of liberty or other constitutionally protected interest and is entitled by law to legal representation;
>
> . . . .
>
> (3) Any other cases in which the Office of Indigent Defense Services is designated by statute as responsible for providing legal representation.
>
> . . . .
>
> (c) In all cases subject to this Article, appointment of counsel, determination of compensation, appointment of experts, and use of funds for experts and other services related to legal representation shall be in accordance with rules and procedures adopted by the Office of Indigent Defense Services.

N.C. Gen. Stat. § 7A-498.3 (2013). "In . . . non-criminal cases, the court may approve fees for the service of expert witnesses, investigators, and others providing services related to legal representation in accordance with all applicable IDS rules and policies." NC R IND DEF SERV Rule 1.10 (Amended eff. Dec. 9, 2011). There are no statutes or rules that more definitively state when fees for expert witnesses should be granted in a situation such as the one before us. The decision to grant or deny fees in the present case was discretionary. *In re Hardy*, 294 N.C. 90, 97, 240 S.E.2d 367, 372 (1978) (citation omitted) ("Ordinarily when the word 'may' is used in a statute, it will be construed as permissive and not mandatory.").

Similar language from Article 36 of Chapter 7A of our General Statutes, "Entitlement of Indigent Persons Generally," has been held to be discretionary:

> N.C. Gen. Stat. § 7A-454 (2003) states, "[f]ees for the services of an expert witness for an indigent person and other necessary expenses of counsel shall be paid by the State in accordance with rules adopted by the Office of Indigent Defense Services." . . . . [I]t is in the trial court's discretion whether to grant requests for expenses to retain an expert witness or to conduct a deposition.

*In re D.R.*, 172 N.C. App. 300, 304-05, 616 S.E.2d 300, 304 (2005) (citations omitted). In the Article 36, Chapter 7A context, our Courts have held that funds for an expert witness should be

provided when there is a reasonable likelihood that the expert witness will be of material assistance in the preparation of the defense, or that without such help it is probable that the respondent or defendant will not receive a fair trial. *D.R.*, 172 N.C. App. at 305, 616 S.E.2d at 304-05 (holding trial court did not abuse its discretion in denying funds for expert witness in termination of parental rights hearing). "'Mere hope or suspicion that favorable evidence is available is not enough to require that such help be provided.'" *Id*. at 305, 616 S.E.2d at 304 (citations omitted). We hold the same rule applies in a voluntary commitment proceeding of a minor.

However, what is required to show that an expert witness will be of material assistance in the preparation of the defense or, that without such help, it is probable the respondent will not receive a fair hearing, is different in a commitment hearing than it is in a criminal trial or a termination of parental rights proceeding. *See Addington v. Texas*, 441 U.S. 418, 429, 431, 60 L. Ed. 2d 323, 333 (1979) ("the initial inquiry in a civil commitment proceeding is very different from the central issue in either a delinquency proceeding or a criminal prosecution").

This Court has held that a minor, facing commitment pursuant to the voluntary commitment statute, is entitled to due process protections. *In re Long*, 25 N.C. App. 702, 706-07, 214 S.E.2d

626, 628-29 (1975). "It is not disputed that a child, in common with adults, has a substantial liberty interest in not being confined unnecessarily for medical treatment and that the state's involvement in the commitment decision constitutes state action under the Fourteenth Amendment." *Parham v. J. R.*, 442 U.S. 584, 600, 61 L. Ed. 2d 101 (1979) (citations omitted).

When addressing constitutional issues involving a child and his parent or guardian, the law starts with the presumption that the parent or guardian acts with the best interests of the child as the primary goal. *Parham v. J. R.*, 442 U.S. 584, 602, 61 L. Ed. 2d 101, 117 (1979). However:

> As with so many other legal presumptions, experience and reality may rebut what the law accepts as a starting point; the incidence of child neglect and abuse cases attests to this. That some parents "may at times be acting against the interests of their children" . . . creates a basis for caution, but is hardly a reason to discard wholesale those pages of human experience that teach that parents generally do act in the child's best interests. The statist notion that governmental power should supersede parental authority in *all* cases because *some* parents abuse and neglect children is repugnant to American tradition.
>
> Nonetheless, we have recognized that a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized.

*Id*. at 602-03, 61 L. Ed. 2d at 119.

> In defining the respective rights and prerogatives of the child and parent in the voluntary commitment setting, we conclude that our precedents permit the parents to retain a substantial, if not the dominant, role in the decision, absent a finding of neglect or abuse, and that the traditional presumption that the parents act in the best interests of their child should apply. We also conclude, however, that the child's rights and the nature of the commitment decision are such that parents cannot always have absolute and unreviewable discretion to decide whether to have a child institutionalized.

*Id*. at 604, 61 L. Ed. 2d at 120.

Due process requires an inquiry by a "neutral factfinder" to determine whether constitutionally adequate procedures are followed before a child is voluntarily committed based upon his guardian's affirmations. *See Id*. at 606, 61 L. Ed. 2d at 121. The Second Circuit has held:

> We conclude that the due process clause does not require a state to provide an indigent patient with a consulting psychiatrist in every commitment or retention proceeding. Such a psychiatrist would perform two functions: (i) providing testimony favorable to non-commitment or release if the psychiatrist's professional judgment so warrants; and (ii) providing assistance to counsel in preparing the patient's case even where the doctor favors commitment or retention. These functions are not of sufficient import to implicate due process in every proceeding.

*Goetz v. Crosson*, 967 F.2d 29, 34-35 (2d Cir. 1992). The Second Circuit further stated that it has "no basis for assuming that

psychiatrists associated with the state have a bias toward institutionalization." *Id*.

> Unlike civil or criminal proceedings, the interests of the parties to a civil commitment proceeding are not entirely adverse. The state's concerns are to provide care to those whose mental disorders render them unable to care for themselves and to protect both the community and the individuals themselves from dangerous manifestations of their mental illness. A major component of the state policy is thus the protection of mentally ill individuals[.]

*Id*. at 34-35 (citation omitted). We agree with and adopt the Second Circuit's reasoning. The analysis may change somewhat when the mental health professional or professionals, testifying as experts, do not work for the State. As an example, it is conceivable, though certainly not expected, that self-serving financial motivations could affect the neutrality of mental health professionals working for private institutions. Institutional pressure to "fill the beds" in an effort to maximize profits is a hypothetical possibility. However, we do not mean to suggest that a different standard should apply to private institutions, only that there might be different concerns for the trial court to consider, depending on the facts of any particular admission.

In the present case, it appears Respondent was voluntarily committed to a private institution. It was Respondent's burden to

convince the trial court that there existed some valid concern or reason to provide funds for an "independent" expert.

> [T]he Due Process Clause does not grant an indigent individual subject to involuntary commitment an absolute right to the assistance of a consulting psychiatrist. Such a right might arise in a case in which counsel has shown a compelling fact-specific need for the assistance of a psychiatrist to educate counsel in particular aspects of a case.

*Id*. at 36. In the present case, Respondent argues funding for an additional expert was necessary because that expert might find something objectionable in the determinations of the experts who did testify, might help Respondent's attorney better understand the testimony of the other experts, or might provide expert testimony that continued admission was not appropriate. However, Respondent failed to provide the trial court with any evidence from which it could have determined that the motivations of the testifying experts were suspect, or that there existed some particularized reason, outside reasons that would be found in a standard case, why this case required funding an expert for Respondent. Because we hold that Respondent has failed to meet this burden, we further hold that the trial court did not abuse its discretion in refusing to order fees for an expert witness for Respondent. Respondent fails to meet his burden of showing an abuse of discretion. This argument is without merit.

III.

In Respondent's second argument, he contends the trial court abused its discretion by qualifying McCallum and Green as experts. We disagree.

> It is well-established that trial courts must decide preliminary questions concerning the qualifications of experts to testify or the admissibility of expert testimony. When making such determinations, trial courts are not bound by the rules of evidence. In this capacity, trial courts are afforded "wide latitude of discretion when making a determination about the admissibility of expert testimony." Given such latitude, it follows that a trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion.

*Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citations omitted). "Opinion testimony given by an expert witness is competent when evidence is presented showing 'that, through study or experience, or both, the witness has acquired such skill that he is better qualified than the jury to form an opinion on the particular subject of his testimony.'" *Cannizzaro v. Food Lion*, 198 N.C. App. 660, 666, 680 S.E.2d 265, 269 (2009) (citation omitted).

McCallum testified on *voir dire* that, at the time of the hearing, that she taught mental health "diagnosis and assessment courses" at an accredited online program in mental health counseling. She also testified that she worked for Jackson

Springs, conducting their "comprehensive clinical assessments for all the new admissions[.]" She had a master's degree in counseling, a post-master's degree in advanced school counseling and a doctorate in counselor education and supervision. McCallum had worked in the mental health and substance abuse field since 1996, and had the Licensed Professional Counselor credential, which allowed her to diagnose and treat mental illness patients in North Carolina. McCallum had also been a school counselor for ten years, had previously worked in a day treatment facility, working mostly with children and adolescents, and had been conducting comprehensive clinical assessments since 2009.

Green testified on *voir dire* that she was currently employed with Pinnacle Management Group ("Pinnacle"), which owned Jackson Springs, and that she was providing clinical oversight for the patients in the facilities owned by Pinnacle. Green testified she had a master's degree in clinical counseling, had the Licensed Professional Counselor license for North Carolina, and the Licensed Clinical Addiction Specialist license for North Carolina, which allowed her to diagnose and treat substance abuse, and that she was nationally accredited as a clinical counselor. She testified that she had "provided treatment in mental health and substance abuse for families, adults and children in both public and private sectors and in several different settings to include

inpatient treatment as well as the judicial system." Green testified that she had been providing these services since 1988, "but in a professional capacity since the year 2001."

We hold that there was substantial evidence presented on *voir dire* to support the trial court's determination that McCallum and Green were "better qualified than the jury to form an opinion on the particular subject of [their] testimony." *Cannizzaro*, 198 N.C. App. at 666, 680 S.E.2d at 269 (citation omitted). The trial court did not abuse its discretion in allowing McCallum and Green to testify as experts in the fields of counseling and diagnosis and treatment of mental illness and substance abuse in minors. This argument is without merit.

IV.

In Respondent's third argument, he contends the trial court erred in overruling his objections to McCallum's opinion that Respondent was in need of continued inpatient treatment because McCallum relied on conclusions of the clinical staff and failed to form an independent opinion. We disagree.

> N.C.R. Evid. 703 provides that the facts or data upon which an expert bases her opinion may be those (1) perceived by the witness or (2) made known to her at or before the hearing. The expert's opinion may even be based upon facts not otherwise admissible in evidence, provided the facts so considered are of the type reasonably relied upon by similar experts in forming opinions on the subject.

*State v. Black*, 111 N.C. App. 284, 293, 432 S.E.2d 710, 716-17 (1993) (citation omitted). "We emphasize that the expert must present an independent opinion obtained through his or her own analysis and not merely 'surrogate testimony' parroting otherwise inadmissible statements." *State v. Ortiz-Zape*, __ N.C. App. __, __, 743 S.E.2d 156, 162 (2013) (citation omitted).

McCallum interviewed and assessed Respondent when Respondent was first admitted to Jackson Springs. McCallum testified concerning her approach to her 23 May 2012 interview of Respondent:

> [B]efore I look at the records I like to talk with the client, and I always tell my clients the record is what other people say about you. I want to hear from you because you're the best source of information.
> Once I interview the child and get a current bio, psycho-social history, I then proceed to the record and start looking for inconsistencies maybe in what the client said and what's in the record and begin to sort of sort through all of that.
> Sometimes I have access to a case manager or a legal guardian. And I have noted in here that I did not speak with his legal guardian. I think I called and got an answering machine and did not ever speak with his legal guardian directly.
> So I depended on notes, the case manager, and my interview with him to come up with a diagnosis and to determine that he did in fact meet the criteria for PRTF placement.

McCallum assessed Respondent again on 2 October 2012. McCallum was asked: "And based on your examinations of [Respondent], especially the one most recently conducted in October, is it your

expert opinion that he continues to suffer from a mental illness?" McCallum answered: "It is." She testified concerning the criteria required to admit a person into a twenty-four hour treatment facility and was asked on cross-examination: "But you have to look at him individually and decide whether or not he meets [the criteria for inpatient treatment][.]" McCallum replied: "Absolutely. And I did." McCallum testified that she also consulted with the clinical staff at least monthly, and factored their discussions into her diagnoses. We hold there was evidence presented that McCallum relied on her own assessments of Respondent, as well as evidence such as patient history and group clinical discussion, reasonably relied upon by similar experts. *Black*, 111 N.C. App. at 293, 432 S.E.2d at 716-17. This argument is without merit.

V.

In Respondent's fourth argument, he contends Respondent's continued admission to Jackson Springs was unlawful because "the record does not show that [Respondent] was evaluated by a physician within twenty-four hours" as required by law. We disagree.

Respondent contends this issue is controlled by N.C. Gen. Stat. § 122C-211(c), which states in part: "Any individual who voluntarily seeks admission to a 24-hour facility in which medical care is an integral component of the treatment shall be examined

and evaluated by a physician of the facility within 24 hours of admission." N.C. Gen. Stat. § 122C-211(c) (2013). However, there is not sufficient record evidence that Jackson Springs is a "facility in which medical care is an integral component of the treatment." Respondent argues that he receives prescription medication at Jackson Springs, but we do not believe the use of prescription medications at Jackson Springs is sufficient to define Jackson Springs as such a facility. N.C.G.S. § 122C-211(d) states in part:

> Any individual who voluntarily seeks admission to any 24-hour facility, other than one in which medical care is an integral component of the treatment, shall have a medical examination within 30 days before or after admission if it is reasonably expected that the individual will receive treatment for more than 30 days or shall produce a current, valid physical examination report, signed by a physician, completed within 12 months prior to the current admission.

N.C.G.S. § 122C-211(d). Because there is insufficient record evidence that medical care is an integral component of treatment at Jackson Springs, there was no statutory requirement that Respondent receive a medical examination within twenty-four hours of admission. Respondent makes no argument that the requirements of N.C.G.S. § 122C-211(d) have been violated in the present case. This argument is without merit.

VI.

In Respondent's final argument, he contends the trial court erred in failing to make a finding that Respondent was in need of further treatment at Jackson Springs.  We agree.

Hearings for review of voluntary admission of minors to twenty-four hour treatment facilities are covered by N.C. Gen. Stat. § 122C-224.3, which states in relevant part:

> (f) For an admission to be authorized beyond the hearing, the minor must be (1) mentally ill or a substance abuser and (2) in need of further treatment at the 24-hour facility to which he has been admitted.  Further treatment at the admitting facility should be undertaken only when lesser measures will be insufficient.  It is not necessary that the judge make a finding of dangerousness in order to support a concurrence in the admission.
>
> (g) The court shall make one of the following dispositions:
>
>> (1)  If the court finds by clear, cogent, and convincing evidence that the requirements of subsection (f) have been met, the court shall concur with the voluntary admission and set the length of the authorized admission of the minor for a period not to exceed 90 days[.]

N.C. Gen. Stat. § 122C-224.3 (2013).  When reviewing a prior but substantially similar statute, this Court held that making the required findings is mandatory, and that failure to do so will result in reversal of the commitment order.  *In re Hiatt*, 45 N.C. App. 318, 319, 262 S.E.2d 685, 686 (1980) ("We hold that under G.S. 122-56.7(b) before a court can concur with a voluntary

commitment for an incompetent, it must find that the incompetent is mentally ill or an inebriate and is in need of further treatment at the treatment facility.").

In the case before us, the trial court found in the 29 October 2012 order that Respondent was mentally ill, and that no less restrictive measures would be sufficient. The trial court then "authorize[d] the continued admission of . . . [R]espondent[.]" However, the trial court failed to specifically find that Respondent was in need of further treatment. Under the conclusions section of the AOC-SP-913M form, "Order Voluntary Admission of Minor," there are boxes to indicate whether the trial court "concludes" that the minor is "mentally ill," a "substance abuser," "in need of continued treatment at the 24-hour facility to which [Respondent] has been admitted," and whether "less restrictive measures would not be sufficient." The trial court checked the boxes indicating that Respondent was mentally ill and that less restrictive measures would not be sufficient. The trial court failed to check a box to indicate that Respondent either was or was not in need of continued treatment at Jackson Springs. Though need for further treatment is a reasonable inference of the findings and conclusions made, we hold that the required ultimate findings of fact must be made explicitly and reverse the order of the trial court. *Id*. at 319-20, 262 S.E.2d at 686. We realize

there will be no practical effect to Respondent in reversal of the 29 October 2012 order, as the order is no longer in effect, but this Court held in similar circumstances in *Hiatt* that failure to make the required findings results in reversal. *See Id*.

Reversed.

Judges BRYANT and STROUD concur.