ELMORE, Judge.
 

 *417
 
 Respondent Stephen Wolfe, an adult incompetent, appeals from an order concurring in his voluntary admission to a twenty-four hour (inpatient) psychiatric facility and ordering he remain admitted for further inpatient treatment. Wolfe contends the trial court lacked subject-matter jurisdiction to enter its order because it never received his written and signed application for voluntary admission to the facility as statutorily required to initiate the postadmission review hearing from which its order arose. Because we hold the lack of a written and signed application for voluntary admission fails to vest a district court's subject-matter jurisdiction to concur in a patient's voluntary admission and order continued admission for further treatment, we vacate the court's order.
 

 *651
 

 I. Background
 

 On 25 May 2016, Wolfe presented to the emergency department at Mission Hospital in Buncombe County "suffering from self-reported dehydration, and apparent psychiatric decompensation due to treatment noncompliance." Three days later Wolfe was admitted to Mission Hospital's inpatient psychiatric unit (Copestone) and evaluated that same day by a staff psychiatrist, Dr. Suzanne Collier.
 

 On 31 May, Dr. Collier filed with the Buncombe County District Court an evaluation for admission, in which she noted that Wolfe had a history of bipolar disorder and psychiatric hospitalizations; that he had recently stopped taking his psychiatric medication and was exhibiting signs of paranoia, delusions, and sleeplessness; and opined that Wolfe was mentally ill, needed further evaluation, and should be admitted to Copestone for inpatient psychiatric treatment. Upon receipt of Dr. Collier's evaluation, the district court scheduled an "Involuntary Commitment or Voluntary Admission hearing" to review Wolfe's admission and determine if further inpatient psychiatric treatment was necessary. The district court never received a written and signed application for Wolfe's voluntary admission to Mission Hospital or to its psychiatric unit at Copestone.
 

 On 3 June, Wolfe was appointed counsel. After interviewing Wolfe, his appointed counsel filed a notice with the district court requesting a hearing because Wolfe "does not agree with [Dr. Collier's] recommendations."
 

 At the 9 June hearing on Wolfe's admission, Dr. Collier testified that Wolfe "did not present [to the emergency room] for psychiatric reasons per his report" and stated when she first evaluated Wolfe on 28 May, "he told me he came in for some other medical problem, and that he didn't need to be at Copestone." Dr. Collier stated that Wolfe was admitted to
 
 *418
 
 the hospital's psychiatric unit because he had stopped taking his bipolar disorder medications; was currently in a manic episode ; and was decompensating, experiencing symptoms of agitation, paranoia, delusions, and sleeplessness. After about a week of observation, Dr. Collier explained that Wolfe "generally remained calm, but argumentative about the fact that he [did not] believe he need[ed] to be on medication." Wolfe initially refused to take the oral psychiatric medication prescribed at Copestone because he believed it was unnecessary and was "poisoning him." After a few forced antipsychotic injections to which Wolfe's guardian apparently consented, Wolfe started voluntarily taking his oral medication a few days before the hearing. Dr. Collier opined that Wolfe needed further inpatient treatment to stabilize him on his current medication and expressed concern that if he were released, Wolfe might stop taking his medication, decompensate, and become manic. She opined further that it would currently be medically inappropriate to discharge Wolfe to an independent living situation and requested that the court authorize his continued inpatient psychiatric treatment at Copestone for thirty more days.
 

 Wolfe testified that he presented to Mission Hospital's emergency department complaining of severe dehydration and malnourishment because he was unable to pay for groceries, since his payee, who receives government benefits on his behalf, failed to provide him funds timely for basic living expenses. Wolfe conceded that he did not believe he has bipolar disorder and stated he initially refused medication at Copestone because each of the seven or eight psychiatric medications he has been prescribed over the past several years have "poison[ed the] emotional state of being in [his] state of mind" and have "made [him] angry, irritable, and stupid." Wolfe testified that he was currently receiving outpatient treatment at Family Preservation Services and taking psychiatric medication as needed, as prescribed by a general psychiatrist there. Wolfe indicated he would continue taking the medicine prescribed at Copestone if discharged and was currently able to return to living independently. Wolfe requested that if the court found it necessary he receive further inpatient treatment, it send him to another facility for an independent assessment, since Copestone "seem[ed] to be intent on making [him] take [bipolar] medicine and stay there." Wolfe's guardian was not present at the hearing.
 

 *652
 
 After the hearing, the court entered an order on 9 June 2016 concurring in Wolfe's voluntary admission and authorizing his continued inpatient admission at Copestone for no more than thirty days. In its order, the court found by clear, cogent, and convincing evidence that Wolfe was mentally ill, in need of further treatment at Copestone, and
 
 *419
 
 that lesser measures would be insufficient. Wolfe was discharged from Copestone on 22 June 2016. Wolfe appeals.
 

 II. Analysis
 

 On appeal, Wolfe contends the trial court lacked jurisdiction to concur in his voluntary admission and order he remain admitted for further inpatient psychiatric treatment because it never received a written and signed application for his voluntary admission to Copestone as required by N.C. Gen. Stat. § 122C-232 to initiate the hearing. Wolfe also challenges the sufficiency of evidence underlying the district court's finding that his admission was voluntary, arguing no evidence presented showed that his admission to Mission Hospital's inpatient psychiatric unit at Copestone was, in fact, voluntary. Because we hold that the lack of Wolfe's application for voluntary admission failed to vest the trial court with subject-matter jurisdiction to concur in his admission and authorize he remain admitted for additional inpatient treatment, we vacate the order and thus decline to address Wolfe's second argument.
 

 We review
 
 de novo
 
 whether a trial court has jurisdiction over particular subject matter.
 
 See, e.g.
 
 ,
 
 McKoy v. McKoy
 
 ,
 
 202 N.C.App. 509
 
 , 511,
 
 689 S.E.2d 590
 
 , 592 (2010). Subject-matter jurisdiction "involves the authority of a court to adjudicate the type of controversy presented by the action before it."
 
 Haker-Volkening v. Haker
 
 ,
 
 143 N.C.App. 688
 
 , 693,
 
 547 S.E.2d 127
 
 , 130,
 
 disc. rev. denied
 
 ,
 
 354 N.C. 217
 
 ,
 
 554 S.E.2d 338
 
 (2001). "A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity,"
 
 Burgess v. Gibbs
 
 ,
 
 262 N.C. 462
 
 , 465,
 
 137 S.E.2d 806
 
 , 808 (1964) (citing
 
 High v. Pearce
 
 ,
 
 220 N.C. 266
 
 , 271,
 
 17 S.E.2d 108
 
 , 112 (1941) ), and "in its absence a court has no power to act[ and any resulting] 'judgment is void,' "
 
 In re T.R.P.
 
 ,
 
 360 N.C. 588
 
 , 590,
 
 636 S.E.2d 787
 
 , 790 (2006) (quoting
 
 Hart v. Thomasville Motors, Inc.
 
 ,
 
 244 N.C. 84
 
 , 90,
 
 92 S.E.2d 673
 
 , 678 (1956) ). "When the record shows a lack of jurisdiction in the lower court, the appropriate action on the part of the appellate court is to ... vacate any order entered without authority."
 
 State v. Felmet
 
 ,
 
 302 N.C. 173
 
 , 176,
 
 273 S.E.2d 708
 
 , 711 (1981) (citations omitted).
 

 " 'Where jurisdiction is statutory and the [l]egislature requires the [c]ourt to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the [c]ourt to certain limitations, an act of the [c]ourt beyond these limits is in excess of its jurisdiction.' "
 
 In re T.R.P.
 
 ,
 
 360 N.C. at 590
 
 ,
 
 636 S.E.2d at 790
 
 (quoting
 
 Eudy v. Eudy
 
 ,
 
 288 N.C. 71
 
 , 75,
 
 215 S.E.2d 782
 
 , 785 (1975),
 
 overruled on other grounds
 

 *420
 

 by
 

 Quick v. Quick
 
 ,
 
 305 N.C. 446
 
 ,
 
 290 S.E.2d 653
 
 (1982) ). Thus, for certain statutorily created causes of action, a trial court's subject-matter jurisdiction over the action does not fully vest unless the action is properly initiated.
 
 In re T.R.P.
 
 ,
 
 360 N.C. at 591-93
 
 ,
 
 636 S.E.2d at 790-92
 
 (holding court lacked jurisdiction to enter a custody review order in an abuse, neglect, and dependency action because statutorily required initiating petition was defective);
 
 see also
 

 Hodges v. Hodges
 
 ,
 
 226 N.C. 570
 
 , 570-71,
 
 39 S.E.2d 596
 
 , 597 (1946) (holding court lacked jurisdiction to enter order in alimony action because statutorily required initiating complaint was defective). This principle also applies to statutorily created involuntary commitment proceedings and a court's authority to enter an involuntary commitment order.
 
 See
 

 In re Ingram
 
 ,
 
 74 N.C.App. 579
 
 , 580-81,
 
 328 S.E.2d 588
 
 , 589 (1985) (vacating commitment order for want of jurisdiction where initiating petition lacked statutorily required affidavit).
 

 Article 5 of Chapter 122C of the North Carolina General Statutes governs the procedures for admitting or committing persons into inpatient psychiatric facilities. N.C. Gen. Stat. § 122C-211(a) (2015) provides that for a competent adult to seek voluntary admission to a facility, "a written application for evaluation or admission, signed by the individual seeking admission, is required." For
 
 *653
 
 incompetent adults seeking voluntary admission, the written application must be completed and signed by his or her guardian.
 

 Id.
 

 § 122C-231 ("The provisions of G.S. 122C-211 shall apply to admissions of an incompetent adult ... except that the legally responsible person shall act for the individual, in applying for admission to a facility....");
 

 id.
 

 § 122C-3(20) (" 'Legally responsible person' means ... when applied to an adult, who has been adjudicated incompetent, a guardian...."). Accordingly, for Wolfe to have been voluntarily admitted to Copestone, his guardian was required to complete and sign a written application for Wolfe's admission.
 

 N.C. Gen. Stat. § 112C-232 (2015) empowers a district court to review an incompetent adult's voluntary admission into an inpatient psychiatric facility and order he or she remain admitted for further inpatient treatment. The statute mandates that the district court must hold a hearing within ten days after an incompetent adult's voluntary admission to "determine whether the incompetent adult is mentally ill ... and is in need of further treatment at the facility."
 

 Id.
 

 §§ 122C-232(a), (b). If the court determines by clear, cogent, and convincing evidence that the patient is mentally ill, in need of further treatment, and that lesser measures would be insufficient, the court may concur with the voluntary admission and authorize further treatment.
 

 Id.
 

 § 122C-232(b). If further inpatient treatment is authorized, "only the facility or the court may
 
 *421
 
 release the incompetent adult" upon a determination that such treatment is no longer needed.
 

 Id.
 

 § 122C-233(b).
 
 [1]
 

 Significantly here, N.C. Gen. Stat. § 112C-232(b) provides that "[i]n any case requiring [this] hearing ..., no petition is necessary;
 
 the written application for voluntary admission shall serve as the initiating document
 
 for the hearing." (Emphasis added.) This limitation conditions subject-matter jurisdiction: a district court's N.C. Gen. Stat. § 122C-232 jurisdiction to concur in an incompetent adult's voluntary admission and order that he or she remain admitted for further inpatient treatment does not vest absent the statutorily required written application for voluntary admission signed by the incompetent adult's legal guardian.
 

 Here, the district court entered an order purporting to concur in Wolfe's voluntary admission to Copestone and ordering he remain admitted for an additional thirty days of inpatient psychiatric treatment. Yet the appellate record contains no written application for Wolfe's voluntary admission signed by his guardian. Rather, as an amendment to appellate record reflects, Wolfe's "application was not filed in the court file for this case," and the Buncombe County District Court calendared the hearing upon receipt of Dr. Collier's evaluation for admission. Because a written and signed application for voluntary admission never initiated the hearing, the district court failed to comply with the requirements of N.C. Gen. Stat. § 122C-232(b). Because the district court never received this required application for voluntary admission, its subject-matter jurisdiction to concur in Wolfe's voluntary admission to Copestone and order he remain admitted for further inpatient psychiatric treatment never vested. The district court thus lacked authority to enter its voluntary admission order and it must be vacated.
 
 See
 

 In re Ingram
 
 ,
 
 74 N.C.App. at 580-81
 
 ,
 
 328 S.E.2d at 589
 
 (vacating commitment order for want of jurisdiction where petition to initiate involuntary commitment proceedings lacked statutorily required affidavit);
 
 cf.
 

 In re T.R.P.
 
 ,
 
 360 N.C. at 591-93
 
 ,
 
 636 S.E.2d at 790-92
 
 (affirming this Court's decision to vacate a custody review order because lower court's subject-matter jurisdiction never vested where initiating petition lacked statutorily required verification).
 

 III. Conclusion
 

 The lack of a required written application for Wolfe's voluntary admission signed by his guardian failed to vest the district court with
 
 *422
 
 subject-matter jurisdiction to concur in his voluntary admission to Copestone and order he remain admitted for further inpatient
 
 *654
 
 treatment. We therefore vacate its voluntary admission order.
 

 VACATED.
 

 Judges INMAN and BERGER concur.
 

 [1]
 

 Additionally, if the facility refuses a legal guardian's request to discharge an incompetent adult, the guardian may apply to the court for a discharge hearing.
 

 Id.