DAVIS, Judge.
*216 P.S. ("Paul"),[1] L.T. ("Luke"), N.J. ("Natalie"), and R.J. ("Robert") (collectively, "Respondents") appeal from the trial court's 16 June 2016 orders concurring in their voluntary readmissions to Strategic Behavioral Center for inpatient mental health treatment. The primary issue in these four consolidated appeals is whether Respondents' readmissions to the facility were rendered unlawful due to the illegality of their initial admissions. In addition, we address various other arguments regarding the minors' readmissions, including (1) whether a trial court is required to conduct an initial jurisdictional inquiry at voluntary admission hearings to ensure the minor's admission authorization form was signed by a *217 legally responsible person; (2) whether an admission authorization form may be based on verbal-rather than written-consent of the minor's parent or guardian; and (3) whether a specific procedure must be followed before a trial court can accept a minor's consent to the recommendation that he be admitted to a 24-hour inpatient facility. After a thorough review of the facts and applicable principles of law, we affirm in part and vacate in part.
Factual and Procedural Background
Respondents are four minor children who either suffer from mental illness or from substance abuse. At various times during the spring of 2016, they were admitted to a mental health facility in Charlotte operated by Strategic Behavioral Health ("Strategic"). In May 2016, Strategic conducted a self-audit during which it discovered that Respondents and five other minors had been improperly admitted to the facility without having received a hearing within fifteen days of their admissions as required by North Carolina law. After becoming aware of its error, Strategic discharged, reevaluated, and then readmitted Respondents beginning on 30 May 2016.
I. Luke
Luke grew up in a home where he was "neglected and abused[,]" his mother used drugs, and she once "burn[ed] him with a cigarette." He got into "trouble in school" and was "suspended many times for his behavior."
Luke was thirteen years old when he was first admitted to Strategic on or about 3 April 2016. After approximately two months without judicial review of his admission, he was discharged and readmitted to the facility on 3 June 2016.
II. Robert
Robert reported being raped by his uncle when he was 4 or 5 years old. He has a history of suicide attempts and has reported "being born addicted to cocaine." He was suspended from school "for fighting, lying, stealing, and touching females inappropriately." Robert's biological father died when he was young, and he has had no contact with his biological mother. After multiple unsuccessful placements in foster care, Robert's 18-year-old brother adopted him.
Robert was fourteen years old when he was first admitted to Strategic on or about 28 April 2016. After more than a month without judicial review of his admission, he was discharged and readmitted to the facility on 2 June 2016.
*218 III. Paul
Paul displayed aggressive behavior in school, including multiple incidents during which he stabbed other students with pens and pencils. He also had "a history of suicidal ideation behavior such as cutting himself and hitting himself...."
Paul was fifteen years old when he was first admitted to an inpatient facility in another city on or about 10 February 2016 and arrived at Strategic sometime in the spring *634 of 2016. He was discharged and readmitted to Strategic on 30 May 2016.
IV. Natalie
Natalie has a history of angry outbursts and blackout spells, and her mother was concerned about her tendency to become violent toward other individuals in her home. Natalie was fourteen years old when she was first admitted to Strategic on or about 10 March 2016. After nearly three months without judicial review of her voluntary admission, she was discharged and readmitted to the facility on 31 May 2016.
* * *
On 14 June 2016, hearings were held in connection with the readmissions of each Respondent before the Honorable Louis A. Trosch, Jr. in Mecklenburg County District Court. The Council for Children's Rights ("CCR") was appointed to represent Respondents at their respective hearings. Strategic's attorneys, CCR attorneys, and the applicable clerks of court were all present at the hearings.
That same morning, CCR filed motions to dismiss in each of the four cases, asserting that Respondents' readmissions to Strategic violated both their procedural due process rights and applicable statutory provisions set out in Chapter 122C of the North Carolina General Statutes. The trial court consolidated the four motions for hearing. At the close of the arguments, the court denied Respondents' motions to dismiss.
The trial court then held separate hearings regarding the readmission of each Respondent. The court informed each minor that Strategic recommended he or she be readmitted to the facility "for up to 45 more days." The court then asked each of the Respondents whether they consented to the recommendation and informed them that if they disagreed with the recommendation, the court would hold a hearing on the issue.
Paul, Natalie, and Robert each stated that they disagreed with Strategic's recommendation. The court then proceeded to conduct *219 hearings in which the minors and their respective therapists testified. Following each hearing, the court concurred in the recommendation for readmission of the minor based on the testimony that had been presented.
Luke, conversely, consented to Strategic's recommendation for readmission. Therefore, the court adopted the recommendation as to him without conducting a full hearing.
Respondents filed notices of appeal on 24 June 2016. The four appeals were consolidated for oral argument.
Analysis
We review a trial court's order "to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." In re T.H.T. , 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (citation, quotation marks, and brackets omitted), aff'd as modified , 362 N.C. 446, 665 S.E.2d 54 (2008). Findings of fact that are supported by competent evidence or are unchallenged by the appellant are binding on appeal. In re A.B. , --- N.C. App. ----, ----, 781 S.E.2d 685, 689, disc. review denied , 369 N.C. 182, 793 S.E.2d 695 (2016). "Such findings are ... conclusive on appeal even though the evidence might support a finding to the contrary." In re McCabe , 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003). We review a trial court's conclusions of law de novo . In re J.S.L. , 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).
I. Motions to Dismiss
Respondents first argue that the trial court erred in denying their motions to dismiss because Strategic failed to conduct a hearing within fifteen days of their initial admissions as required by N.C. Gen. Stat. § 122C-224. "Article 5 of Chapter 122C of the North Carolina General Statutes governs the procedures for admitting or committing persons into inpatient psychiatric facilities." In re Wolfe , --- N.C. App. ----, 803 S.E.2d 649 (2017) (citation omitted). N.C. Gen. Stat. § 122C-224 states, in pertinent part, as follows:
(a) When a minor is admitted to a 24-hour facility where the minor will be subjected to the same restrictions on his freedom of movement present in the State *635 facilities for the mentally ill, or to similar restrictions, a hearing shall be held by the district court in the county in which the 24-hour facility is located within 15 days of the *220 day that the minor is admitted to the facility. A continuance of not more than five days may be granted.
N.C. Gen. Stat. § 122C-224(a) (2015).[2]
As an initial matter, we observe that both the State and Strategic acknowledge that Respondents' statutory rights were violated during their initial admissions to Strategic based on its failure to schedule hearings as statutorily required. Respondents contend that because the hearing requirement contained in N.C. Gen. Stat. § 122C-224 was not followed in connection with their initial admissions, their subsequent readmissions to the facility were tainted by this error and, therefore, rendered unlawful.[3]
"This Court has held that a minor, facing commitment pursuant to the voluntary commitment statute, is entitled to due process protections." In re A.N.B. , 232 N.C. App. 406, 411, 754 S.E.2d 442, 447 (2014) (citation and quotation marks omitted). "[A] child, in common with adults, has a substantial liberty interest in not being confined unnecessarily for medical treatment and ... the state's involvement in the commitment decision constitutes state action under the Fourteenth Amendment." Id. (citation and quotation marks omitted). We have made clear that "[d]ue process requires an inquiry by a 'neutral factfinder' to determine whether constitutionally adequate procedures are followed before a child is voluntarily committed based upon his guardian's affirmations." Id. at 412, 754 S.E.2d at 447 (citation omitted).
We are unable to accept Respondents' argument that the trial court erred in denying their motions to dismiss. While-as noted above-it is undisputed that Respondents were initially denied the hearings to which they were statutorily entitled, it is likewise undisputed that such hearings did take place upon their readmission as required by N.C. Gen. Stat. § 122C-224.
The statutory scheme contained in Chapter 122C governing such admissions attempts to balance the following interests: (1) the needs of a minor who is mentally ill and in need of treatment, see In re Lynette H. , 323 N.C. 598, 600, 374 S.E.2d 272, 273 (1988) ; (2) the rights of a parent or guardian, see In re Long , 25 N.C. App. 702, 706, 214 S.E.2d 626, 628, cert. denied , 288 N.C. 241, 217 S.E.2d 665 (1975) ; and (3) the minor's *221 right to procedural due process, see id. at 707, 214 S.E.2d at 629. While the admission of a minor to a 24-hour facility obviously has a significant impact on the minor's rights, it is important to note that such admissions are not punitive in nature but rather designed to facilitate the minor's receipt of necessary treatment. Moreover, our General Assembly has stated that "[i]t is State policy to encourage voluntary admissions to facilities." N.C. Gen. Stat. § 122C-201 (2015).
Respondents' argument, if accepted, would result in the denial of treatment to the minors for some indeterminate period of time regardless of whether they were, in fact, genuinely in need of the treatment provided by Strategic. We do not believe the law requires such a result. See In re Webber , 201 N.C. App. 212, 222, 689 S.E.2d 468, 476 (2009) (holding that respondent could not challenge procedural deficiencies in his initial commitment order through appeal of his recommitment order), cert. denied , 364 N.C. 241, 699 S.E.2d 925 (2010). Therefore, we conclude that the trial court did not err in denying Respondents' motions to dismiss.
II. Subject Matter Jurisdiction
Respondents next argue that the trial court lacked subject matter jurisdiction to concur in their readmissions to Strategic. Specifically, they contend that the jurisdiction of the trial court could not be invoked until such time as it made a determination that Respondents' admission authorization forms had been signed by legally authorized persons as mandated by statute.
*636 "Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question." Harris v. Pembaur , 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987) (citation omitted). It is well established that "[s]ubject matter jurisdiction ... is conferred upon the courts by either the North Carolina Constitution or by statute." In re M.B. , 179 N.C. App. 572, 574, 635 S.E.2d 8, 10 (2006) (citation and quotation marks omitted). "Subject matter jurisdiction cannot be conferred by consent or waiver, and the issue of subject matter jurisdiction may be raised for the first time on appeal." In re H.L.A.D. , 184 N.C. App. 381, 385, 646 S.E.2d 425, 429 (2007), aff'd per curiam , 362 N.C. 170, 655 S.E.2d 712 (2008) (citation omitted). Whether a court has jurisdiction is a question of law reviewable de novo on appeal. In re K.U.-S.G., D.L.L.G., & P.T.D.G. , 208 N.C. App. 128, 131, 702 S.E.2d 103, 105 (2010) (citation omitted).
Our Supreme Court has held that "[w]here jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is *222 in excess of its jurisdiction." In re T.R.P. , 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006) (citation and quotation marks omitted). "[F]or certain statutorily created causes of action, a trial court's subject-matter jurisdiction over the action does not fully vest unless the action is properly initiated." In re Wolfe , --- N.C. App. at ----, 803 S.E.2d at 652 (citation omitted).
This Court recently addressed the issue of subject matter jurisdiction in the context of voluntary admissions of incompetent adults. In In re Wolfe , the respondent argued on appeal that the trial court had erred in concurring in his voluntary admission to an inpatient psychiatric facility. Specifically, he contended that the trial court lacked jurisdiction to concur in the admission because it never received a written and signed admission form as required by N.C. Gen. Stat. § 122C-232. Id. at ----, 803 S.E.2d at 652. In our analysis, we recognized at the outset that "[i]n any case requiring [a] hearing [pursuant to N.C. Gen. Stat. § 122C-232 ] ... the written application for voluntary admission shall serve as the initiating document for the hearing." Id. at ----, 803 S.E.2d at 653. We then stated that
[t]his limitation conditions subject-matter jurisdiction: a district court's N.C. Gen. Stat. § 122C-232 jurisdiction to concur in an incompetent adult's voluntary admission and order that he or she remain admitted for further inpatient treatment does not vest absent the statutorily required written application for voluntary admission signed by the incompetent adult's legal guardian.
Id. at ----, 803 S.E.2d at 653 (emphasis added).
We determined that "the appellate record contain[ed] no written application for [the respondent's] voluntary admission signed by his guardian. Rather, as an amendment to [the] appellate record reflects, [his] application was not filed in the court file for this case, and the Buncombe County District Court calendared the hearing upon receipt of [the psychiatrist's] evaluation for admission." Id. at ----, 803 S.E.2d at 653. Thus, we concluded as follows:
Because a written and signed application for voluntary admission never initiated the hearing, the district court failed to comply with the requirements of N.C. Gen. Stat. § 122C-232(b). Because the district court never received this required application for voluntary admission, its subject-matter jurisdiction to concur in [the respondent]'s voluntary admission to Copestone and order he remain *223 admitted for further inpatient psychiatric treatment never vested. The district court thus lacked authority to enter its voluntary admission order and it must be vacated.
Id. at ----, 803 S.E.2d at 653.
N.C. Gen. Stat. § 122C-221 states, in pertinent part, that "the provisions of G.S. 122C-211 shall apply to admissions of minors under this Part." N.C. Gen. Stat. § 122C-221(a). N.C. Gen. Stat. § 122C-211(a) provides as follows:
(a) Except as provided in subsections (b) through (f1) of this section, any individual, including a parent in a family unit, in need *637 of treatment for mental illness or substance abuse may seek voluntary admission at any facility by presenting himself for evaluation to the facility. No physician's statement is necessary, but a written application for evaluation or admission, signed by the individual seeking admission, is required.
N.C. Gen. Stat. § 122C-211(a) (2015) (emphasis added). N.C. Gen. Stat. § 122C-221(a) states that "... in applying for admission to a facility, in consenting to medical treatment when consent is required, and in any other legal procedure under this Article, the legally responsible person shall act for the minor." N.C. Gen. Stat. § 122C-221(a). Thus, absent the filing of an admission authorization form for a minor in need of treatment signed by a legally responsible person as required by N.C. Gen. Stat. § 122C-221, the trial court's subject matter jurisdiction to concur in the minor's admission is not invoked.
We now turn to the facts of the four cases before us. Respondents essentially make two arguments as to why the trial court lacked subject matter jurisdiction in these cases: (1) the trial court failed to make an independent determination that the signatures on the forms admitting Paul, Luke, and Robert were from persons who possessed legal authority to voluntarily admit them; and (2) Natalie's form did not even purport to contain the signature of a legally responsible person and instead merely stated that Strategic had received verbal consent for her admission. We address each argument in turn.
A. Admission Authorization Forms for Paul, Luke, and Robert
Respondents assert that before the trial court's subject matter jurisdiction could be invoked in the cases of Paul, Luke, and Robert, it was required to make an independent assessment that their admission *224 authorization forms were actually signed by legally responsible persons as required by N.C. Gen. Stat. § 122C-221. We disagree.
As stated above, in order to admit a minor to an inpatient facility, "a written application for evaluation or admission, signed by the [legally responsible person] seeking admission, is required." N.C. Gen. Stat. § 122C-211(a) ; see also N.C. Gen. Stat. § 122C-221(a) (requiring a legally responsible person to sign on behalf of a minor).
However, the General Assembly has not expressly required that the trial court independently verify in each case that the admission authorization form was, in fact, signed by a legally responsible person. We decline to judicially impose such a requirement in the absence of legislative direction. Thus, in cases where an admission authorization form is filed that-on its face-purports to comply with N.C. Gen. Stat. § 122C-221(a), the trial court is entitled to presume that the form was, in fact, signed by a legally responsible person. However, this presumption can be rebutted by evidence to the contrary.
Here, the admission authorization forms for Paul, Luke, and Robert each contained a signature in the appropriate spot on Strategic's standard admission form indicating that the form had been signed by a parent or guardian. Therefore, the trial court was permitted to treat the forms as presumptively valid and sufficient to invoke the court's subject matter jurisdiction. Accordingly, we hold that the court possessed subject matter jurisdiction over the proceedings involving Paul, Luke, and Robert.
B. Admission Authorization Form for Natalie
We must next determine whether subject matter jurisdiction likewise existed with regard to Natalie's proceeding. Her appeal raises a different issue as her admission authorization form was not signed by a legally responsible person. Instead, the form unambiguously states that it was signed by a representative of Strategic based on the verbal authorization of Natalie's parent.
As previously discussed, the legislature has directed that a legally responsible person must sign the admission authorization form on behalf of the minor child in order for the child to be voluntarily admitted to a mental health facility. In the absence of such a signed form, the trial court cannot exercise its subject matter jurisdiction to concur in *638 the minor's voluntary admission. See Wolfe , --- N.C. App. at ----, 803 S.E.2d at 653. *225 At the bottom of Natalie's admission authorization form was a stamp containing the following words:
Official Verbal Consent Received
by Legal Guardian/Parent on this date:
Strategic Behavioral Health-Charlotte, LLC
Next to this stamp, an individual named Laura Strother-presumably a representative of Strategic-wrote the words "consent obtained by [Natalie's mother]" above the line requiring the "Signature of Parent/Guardian." Ms. Strother also signed her own name above the line requiring the "Signature of Witness."
The admission authorization form contains ten paragraphs setting out various information about Strategic and the treatment to be administered to the minor upon admission. By initialing these paragraphs, the legally responsible person acknowledges that he or she has read and understood the information contained therein. However, Natalie's form did not contain any initials next to these paragraphs.
In arguing that this verbal consent by Natalie's parent was sufficient to satisfy N.C. Gen. Stat. § 122C-221, Strategic points to a provision in North Carolina's Uniform Commercial Code that permits certain written instruments to be signed by an agent or representative of a person sought to be held liable under the instrument. See N.C. Gen. Stat. § 25-3-401 (2015). However, the fact that the General Assembly has authorized an exception to the personal signature requirement with regard to negotiable instruments is irrelevant to the entirely unrelated issue of whether verbal authorization by a parent or guardian is sufficient to satisfy N.C. Gen. Stat. § 122C-221. Indeed, the absence of comparable language in § 122C-221 mandates the conclusion that the General Assembly did not intend for a signature purportedly based on a parent or guardian's verbal consent to be sufficient.
Therefore, because Natalie's form did not contain the signature of a legally responsible person, the trial court lacked subject matter jurisdiction to concur in her readmission to Strategic. Accordingly, we vacate the trial court's order readmitting her to the facility.[4]
*226 III. Consent to Admission by Luke
The final issue before us is whether compliance with a formalized procedure was necessary before the trial court was permitted to determine the voluntariness of Luke's consent to Strategic's recommendation that he be readmitted. At the 14 June 2016 hearing, the following exchange occurred:
THE COURT: So, [Luke], let's see-what are your recommendations ... for [Luke]?
[STRATEGIC'S ATTORNEY]: [Luke]'s recommendation is amended 45 days, Your Honor.
THE COURT: All right. And, [Luke], you can either agree to that or you can disagree with that. If you agree with that, then I'm going to sign an order that says you can stay up to 45 days. You cannot stay longer than 45 days, but you could leave sooner than that. It really depends on how things go. Does that make sense to you?
[LUKE]: Yes, sir.
THE COURT: So are you agreeing with that or are you disagreeing with that?
[LUKE]: I'll agree with that.
THE COURT: All right. So I'm going to sign an order then that says that you agree and that it will be up to [your therapist] and your treatment team and how you're doing as to when you leave over those next 45 days. Okay.
[LUKE'S ATTORNEY]: Your Honor, if I could have a minute with [Luke], because our last conversation he was contesting the recommendation.
THE COURT: Sure.
*639 [LUKE'S ATTORNEY]: I just want to make sure that we're clear.
[LUKE]: I agree.
[LUKE'S ATTORNEY]: All right. We're consenting, Your Honor.
On appeal, Luke contends that in order to comport with due process requirements, the trial court was required to either (1) engage in a *227 colloquy with Luke to ensure that he was fully aware of his rights with regard to the hearing; or (2) obtain a written waiver from Luke confirming that he understood the rights he was giving up by consenting to Strategic's recommendation.
The General Assembly has not included within Chapter 122C a specific procedure to be utilized in cases where a minor consents to his voluntary admission to an inpatient facility. Here, the trial court did, in fact, engage in a colloquy-albeit a brief one-with Luke on this issue. While we acknowledge that the better practice would have been for the trial court to engage in a more detailed colloquy with him to ensure that Luke's consent was both voluntary and fully informed, we cannot say on these facts that its failure to do so constituted reversible error.
Moreover, the General Assembly has not seen fit to require a written waiver under these circumstances. Therefore, we once again decline Respondents' invitation to judicially impose requirements that are not actually contained in Chapter 122C. See In re J.M.D. , 210 N.C. App. 420, 427, 708 S.E.2d 167, 172 (2011) ("[N]either we nor the trial court can re-write the statute which the General Assembly has given us."). Accordingly, we cannot say that Luke's due process rights were violated.[5]
Conclusion
For the reasons stated above, we affirm the trial court's orders concurring in the voluntary admissions of Paul, Luke, and Robert in 16 SPC 4047, 16 SPC 4126, and 16 SPC 4080 and vacate the order concurring in the voluntary admission of Natalie in 16 SPC 4081.
AFFIRMED IN PART; VACATED IN PART.
Judges BRYANT and INMAN concur.

Pseudonyms and initials are used throughout this opinion to protect the identities of the minor children and for ease of reading.

It is undisputed that Strategic is a 24-hour inpatient facility.

The extent to which civil remedies may be available to Respondents for the violation of their rights in connection with their initial admissions is not at issue in this appeal.

In its brief, the State argues that this issue was effectively waived by the failure of Natalie's attorney to challenge the trial court's jurisdiction at the hearing. However, it is well established that subject matter jurisdiction cannot be conferred by waiver. See H.L.A.D. , 184 N.C. App. at 385, 646 S.E.2d at 429.

We note that Luke does not actually argue on appeal that his decision to consent to Strategic's recommendation was involuntary or that he did not understand the consequences of his decision.